JOHN M. BOWERS, as Receiver of the MERCANTILE CREDIT GUARANTEE COMPANY OF NEW YORK, Respondent, *v.* WILLIAM M. MALE et al., Appellants, Impleaded with Others.

1. CORPORATIONS — PERSONAL LIABILITY OF DIRECTORS FOR WASTED FUNDS. Directors of a corporation who fail to administer its affairs honestly and with reasonable prudence, not through excusable neglect, but by actual misfeasance in appropriating corporate funds to their own use, are personally liable to a receiver of the corporation for the damages which their misconduct has occasioned to the corporation.

2. SAME. The facts examined in an action by the receiver of an insolvent credit insurance company against its directors personally to recover sums alleged to have been wasted by the defendants in the purchase of the worthless stock of another corporation under the control of said company, and *held* to establish the personal liability of the defendants.

*Bowers* v. *Male,* 111 App. Div. 209, affirmed.

(Argued June 14, 1906; decided October 2, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 5, 1906, affirming a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought by the receiver of the Mercantile Credit Guarantee Company of New York to recover from directors of that company the sum of $30,000 of the corporate funds alleged to have been misapplied and wasted in the purchase of 300 shares of the worthless stock of a corporation known as the Reserve Company. Further facts appear in the opinion.

*William J. Curtis, Charles A. Collin* and *Francis D. Pollak* for appellants. The purchase of the Reserve Company stock by the directors on December 30, 1895, and its repurchase by the company on March 3, 1896, were in truth and fact two phases of one transaction, and two steps in the execution of a single plan. The transaction involved no waste. Neither profit to the directors nor loss to the company was intended or resulted. The transaction's sole purpose

and only result was to enable the company to continue business by making satisfactory reports to the west, and having resulted in no damage to the Mercantile Company and no profit to any director, the company could maintain no action for waste on account of it. (*Kavanaugh* v. *Com. Trust Co.*, 181 N. Y. 121; *Matter of Johnson*, 57 App. Div. 494; *Ter Kinto* v. *Marsland*, 81 Hun, 420; *Wiles* v. *Suydam*, 64 N. Y. 173; *N. Y. & N. H. Ry. Co.* v. *Schuyler*, 17 N. Y. 592; *Mabon* v. *Miller*, 81 App. Div. 10.)

*George Zabriskie* for respondent. The purchase of the Reserve Company's shares was a misapplication and waste of the funds of the credit company, was a wrong and injury to the company and was a violation of the defendants' duties as directors, for which the receiver is entitled to recover damages. (L. 1858, ch. 314; *Atty-Gen.* v. *G. L. Ins. Co.*, 77 N. Y. 272; *Hun* v. *Cary*, 82 N. Y. 65; *P. C. Co.* v. *Macmillan*, 119 N. Y. 46; *O'Brien* v. *Fitzgerald*, 143 N. Y. 377; *Mason* v. *Henry*, 152 N. Y. 529; *Dykman* v. *Keeney*, 154 N. Y. 483; *Hinds* v. *F. & M. G. Co.*, 96 App. Div. 14.) The defenses suggested by the defendants are insufficient to relieve them from liability. (Pomeroy on Remedies, § 769; *Blanchard* v. *Trim*, 38 N. Y. 225; *Shull* v. *Ostrander*, 63 Barb. 130; *Knowles* v. *Toone*, 96 N. Y. 534; *Dechert* v. *M. L. Co.*, 9 App. Div. 573; *Matter of Miller*, 77 App. Div. 473; *F. L. & T. Co.* v. *S. D. S. C. Co.*, 45 Fed. Rep. 518; *Trudo* v. *Anderson*, 10 Mich. 357; *Hotchin* v. *Kent*, 8 Mich. 526; *Bank of New York* v. *A. D. & T. Co.*, 143 N. Y. 559; *Rankin* v. *Bush*, 93 App. Div. 181.)

Werner, J. The referee's opinion, upon which the judgment herein was affirmed at the Appellate Division, so fully sets forth the facts of the case and so clearly demonstrates the legal liability of the defendants that we should also feel disposed to affirm without discussion were it not for one feature of the able and ingenious argument of counsel for the appellants that should not pass unchallenged.

Counsel contend that the courts below have erred in ascribing illegality to the whole of a concrete transaction by selecting for condemnation a single one of the parts which, although concededly repugnant to good morals and sound legal principles, when considered by itself, is said to be purged of all vicious characteristics and invested with the attributes of legal honesty when associated with other phases of the same transaction. The statement of a few facts will suffice to disclose the precise point of appellants' contention and our answer to it.

In 1894 the defendants were directors of the Mercantile Credit Guarantee Company, which was engaged in the business of "guaranteeing or insuring merchants against excessive or unlooked for losses." The operations of the corporation, which was organized under the laws of this state, extended into other states. Among these was the state of Ohio, under the laws of which this corporation was classed as an insurance company whose reserve or surplus must equal fifty per cent of the premiums on insurance in force at the end of each year. The financial condition of the company rendered it impossible to comply with this requirement of the laws of Ohio. The stress of this emergency developed a plan for the temporary creation of a fictitious surplus. The scheme, stated in bare outline, was to increase the company's surplus to the extent of $50,000 by the retirement and cancellation of an equal amount of its capital stock, and to the extent of another $50,000 which was to be raised in cash. These things were to be accomplished through the medium of a corporation known as the "Reserve Company," which was to be capitalized at $100,000 and officered by men who held positions in the Mercantile Company. In exchange for the $50,000 of the canceled capital stock of that company, which, of course, had to be surrendered by its stockholders, the latter were to receive $50,000 of the capital stock of the Reserve Company. In order to give that capital stock at least the semblance of some value it was necessary that it should pay a dividend, and this was to be effected by means of a contract between the

Mercantile Company and one Smith, which was assigned by
the latter to the Reserve Company. Under this contract the
Reserve Company, as the assignee of Smith, was to secure
(1) the exchange of $50,000 of Mercantile stock for an equal
amount of Reserve stock; (2) the delivery for cancellation of
the $50,000 of Mercantile stock thus exchanged; (3) the
payment by the Reserve Company to the Mercantile Com-
pany of $50,000 in cash in three installments at stated
periods. In consideration of the performance of these con-
ditions of the contract, the Mercantile Company agreed to
pay to the Reserve Company one dollar for every $1,000 of
insurance in force on its books on the following first of Janu-
ary and of each January thereafter during the life of the con-
tract. This was the fund from which the Reserve Company
was to pay its dividends. It cannot escape notice that this
general scheme, which was quite elaborate in detail, could
not have been successful without the apparent acquiescence
of the stockholders of the Mercantile Company, which was
expressed in an omnibus ratification appended to the transac-
tion and supplemented by a stockholders' resolution authoriz-
ing the board of directors to purchase Reserve Company stock
at its par value or less, and to deduct the amount of the moneys
so used from the surplus or reserve of the Mercantile Com-
pany over and above its capital. This resolution expressly
provided, however, that no part of the Reserve stock so pur-
chased should appear as an asset of the Mercantile Company
upon its books.

Without dwelling upon the details by means of which the
general plan was to be worked out, it is sufficient to say that
prior to July, 1895, only a single share of the Reserve Com-
pany's stock had been sold outside of that exchanged for
the stock of the Mercantile Company, and the latter still
needed $30,000 more of surplus to be able to comply with the
insurance laws of Ohio, although the time for making its
report had already passed and been extended. There had
been no payments upon any of the installments of $50,000
which the Mercantile Company was to receive under the con-

tract made with Smith and assigned by him to the Reserve Company. In this situation the appellants, who were then officers and directors of the Mercantile Company, subscribed for 300 shares of the Reserve Company's stock and paid for it the sum of $30,000 with money borrowed from the Phœnix National Bank. On the same day the Mercantile Company deposited the $30,000 thus raised in the same bank and received a certificate of deposit " payable on the return of this certificate to the order of the officers of said company duly approved by three of the following: W. H. Male, Siegmund J. Rach, Leopold Herzig, William M. Deen and C. Vincent Smith;" the five persons named being the defendants herein. Thus the Mercantile Company was at last enabled to file a satisfactory report with the insurance authorities of Ohio. The filing of this report was followed in rapid sequence by the adoption of several resolutions by the directorate of the Mercantile Company authorizing the purchase of $30,000 of the Reserve Company's stock, and under these resolutions the defendants, as officers of the Mercantile Company and on its behalf, bought of the defendants, as individuals, the Reserve Company's stock held and owned by them, payment therefor being made by the Mercantile Company's checks, on the Phœnix National Bank. The net result of this transaction was to place in the treasury of the Mercantile Company capital stock of the Reserve Company of the nominal value of $30,000, but actually worthless, and which, under the stockholders' resolution of December, 1894, was not to appear as an asset of the company.

This was the condition of affairs in December, 1895, when the Mercantile Company was confronted with the necessity of filing another report as to assets and surplus in a western state, and to meet this second emergency the transaction above outlined was substantially repeated. The only difference was that now the $30,000 of the Reserve Company's stock was to be purchased by the defendants from the Mercantile Company, which was the apparent owner thereof, but beyond that, the two transactions were identical. In the

latter instance as in the former, the $30,000 of cash which had been used to swell the assets of the Mercantile Company for the purpose of deceiving the insurance authorities and the public, was withdrawn from the corporate treasury by the same individuals, who as trustees of the corporation had placed it there.

The validity of the judgment based upon these facts is assailed by the appellants because, as stated in the argument of their counsel, the allegations of the complaint and the legal conclusions of the learned referee proceed upon the theory that the defendants are chargeable with the single act of selling to the corporation of which they were directors, 300 shares of worthless stock, and unlawfully taking from its treasury the sum of $30,000, when in fact all their acts, considered as parts of the whole transaction, clearly show that in the end the corporation was no poorer and the defendants no richer than before; that no one was injured by what was done, and no one was even deceived or misled, except the public and the insurance authorities of several foreign states.

The primary difficulty with this contention is that the findings of the referee, all of which are amply sustained by the evidence, expressly negative any legal or contractual connection between the original purchase by the defendants of the 300 shares of Reserve Company's stock and the final sale thereof to the Mercantile Company. The second purchase by the defendants of the same 300 shares of Reserve Company's stock on December 30th, 1895, is characterized by the referee as " an absolute purchase " for $30,000 in cash, which " became the absolute property of the Mercantile Company;" and while the purchasers *expected* to be relieved by some subsequent action of the directorate of which they constituted a majority, there never was any agreement on the part of the Mercantile Company that it would repurchase the stock. For obvious reasons it was necessary to the plans of the defendants that there should be no such agreement, or at least none in writing.

Assuming for the purposes of this argument, however, that

the defendants' original purchase of the Reserve Company's stock, and its final sale to the Mercantile Company were, to use the language of defendants' counsel, " two phases of one transaction, and two steps in the execution of a single plan," we fail to perceive how that circumstance could operate to relieve the defendants from liability to the plaintiff. As receiver he represents the corporation for the purpose of enforcing all the legal rights and redressing all the legal wrongs of the corporation, upon which it might have maintained actions or suits before the adjudication of its insolvency. Since the *transaction* upon which this action is based was no less a fraud upon the corporation than upon its creditors, the insurance authorities and the public, the corporation might have brought an action for the restoration to its treasury of its wasted funds, and that right of action has clearly devolved upon the plaintiff. This is the simple theory of the complaint, the trial and the judgment. It was a legal wrong and a distinct injury to the corporation to invest it with a credit that was designed to be fictitious, and under color of which the corporation went on incurring obligations that could not have been created if the true purpose of the defendants had been disclosed. When the defendants purchased of the Mercantile Company the 300 shares of Reserve Company stock and placed in the treasury of the Mercantile Company $30,000 in cash they not only represented to the insurance authorities, the public and to creditors that the corporation was legally qualified to continue its business, but they did in fact increase its capital to the extent of $30,000. Having done that, they should not now be heard to say that in transferring to the corporation 300 shares of worthless stock and taking out of its treasury $30,000 in cash they had simply carried out their original intention to perpetrate a fraud, which is as indefensible in law as it is repugnant to good morals. Shorn of all legal sophistry, the case may fairly be summarized thus: The defendants as directors of the Mercantile Company were trustees charged with the duty of administering its affairs honestly and with reasonable prudence. They failed to per-

form this duty, not through excusable neglect, but by actual misfeasance in appropriating corporate funds to their personal use. That was the legal effect of their action, no matter by what name it may be called. Under such circumstances it cannot be doubted that a receiver represents both the corporation and its creditors for the purpose of recovering from the delinquent directors the damages which their misconduct has occasioned to the corporation. (*Mason* v. *Henry*, 152 N. Y. 529 ; *O'Brien* v. *Fitzgerald*, 143 N. Y. 381; *Hun* v. *Cary*, 82 N. Y. 67 ; *Atty.-Gen.* v. *Guardian Mut. Life Ins. Co.*, 77 N. Y. 272.)

The judgment herein should be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment affirmed.