UNION DISCOUNT COMPANY, INC., Plaintiff, *v.* FREDERICK H. MACROBERT and Others, Defendants.

Supreme Court, New York County, May 7, 1929.

*Wilber W. Chambers*, for the plaintiff.

*Richmond J. Reese*, for the defendant MacRobert.

FRANKENTHALER, J. This is an action brought by a corporation against five former directors and officers. Two of the defendants defaulted, two made settlements, and only the defendant MacRobert resisted at the trial. The first cause of action is for an accounting under section 91-a of the General Corporation Law,* and the second is to fasten liability on the defendants for the declaration and payment of dividends out of capital, in violation of section 58 of the Stock Corporation Law of 1923. The plaintiff was organized in 1922 as a New York corporation. The five defendants were its officers and directors, MacRobert being president. Whatever its corporate powers, the defendants unquestionably represented to the public

---

* Statute was generally revised by Laws of 1929, chap. 650.— [REP.

generally that the plaintiff was in the business of dealing in first mortgages and repeatedly emphasized the conservative character of such a business. Shortly after incorporation the plaintiff entered into an agreement with MacRobert, whereby he was granted an option to purchase its preferred stock at $100 a share and its common stock at fifty cents a share. The avowed purpose was to enable the plaintiff to place its stock without spending funds for the procuring of subscriptions. The option ran to MacRobert, but was actually for a syndicate in which at least four of the defendants had beneficial interests. All of the defendants were then directors of the plaintiff and all of them except MacRobert voted to issue the option. The plaintiff's claim is that instead of paying in cash for the shares of preferred and common stock drawn under this option, as was their plain duty, MacRobert and the other defendants from time to time turned over various securities and accounts in which they had an interest and which were either utterly worthless or had values far below the figures at which they were transferred to the plaintiff. In large measure the proof bears out this claim. The rules of law applicable to the case are elementary. The defendants occupied a fiduciary relationship to the plaintiff. They were inhibited from selling to it property in which they were interested. Until effectively ratified, any such sale was voidable at the election of the corporation. (*Munson* v. *Syracuse, etc., R. R. Co.*, 103 N. Y. 58. See, also, *Globe Woolen Co.* v. *Utica G. & El. Co.*, 224 N. Y. 483.) Even in cases recognizing a rule less rigid, the burden of proving that the corporation received full value in the transaction has been held to be upon the interested directors. (14a C. J. 120.) It is in the light of these principles that the conduct of the defendants in the transactions discussed below is to be judged. In November, 1922, MacRobert sold to the plaintiff 500 shares of stock of the Owners Improvement Corporation for $300,000. This stock had previously been owned by MacRobert and two other defendants, Bready and Peterkin. I am satisfied that the stock was of trifling value at the time and was known by all the defendants to have no substantial worth. MacRobert conceded at the trial that the Owners Improvement Corporation had no tangible assets, but claimed that it had the ability to perform the work whatever that may mean. Under independent and honest management it is inconceivable that the plaintiff would have paid more than a nominal amount for the stock. The shares were tendered to the defendants at the trial, and the plaintiff would consequently be entitled to recover $300,000 on this item. Since, however, the complaint and bill of particulars charge the defendants with only $275,000 on this transaction that is the limit of their accountability. In 1924 or 1925 MacRobert

turned over to the plaintiff preferred and common shares of the Roger Williams Realty Company at a price of $154,400. . I am convinced that this stock was overvalued, certainly to the extent of $79,400, the amount demanded in the complaint and bill of particulars, and the defendant is accordingly accountable for said sum. The plaintiff also seeks to recover $103,268.96 from MacRobert because of certain transactions involving a third mortgage on property at 115 Broad street and certain subordinate debenture bonds. These securities were undoubtedly foisted upon the plaintiff by the defendants and were worthless. It appears, however, that the defendants or some of them later took the mortgage and bonds back at a higher figure and finally transferred them to the plaintiff at a much lower valuation, the motive undoubtedly being to allow the corporation to show paper profits applicable for dividends. I cannot see that the plaintiff suffered any loss on this transaction, other than through the dividends declared on the strength of it, a liability that will be discussed later. The Charter Construction Company was another MacRobert enterprise. After a series of transactions in 1925, which are almost baffling to the understanding, the plaintiff emerged with 5,000 shares of Charter Construction Company stock, for which it canceled a note indebtedness of MacRobert in the sum of $200,000 and parted with $100,000 in cash and $200,000 in its preferred stock. The Charter Construction Company stock was not shown to have any real value, and I am constrained to hold MacRobert accountable for $300,000, the amount claimed in the complaint as due as a consequence of this transaction. The defendants owned stock of the Structural Gypsum Company, which they transferred to the plaintiff for $150,379.11. This stock apparently had some value, for the plaintiff's receivers later sold it for $102,662.76. There is no evidence as to the real value of this stock at the time of transfer. The burden of proof being on the defendants, I hold MacRobert liable for the loss incurred, $47,716.35. MacRobert turned over to the plaintiff $744,154.57 in the form of contracts by purchasers of the plaintiff's stock, this being the unpaid balance of the purchase price. The plaintiff has collected $171,817.53 on these contracts and demands judgment against MacRobert for the remainder, $572,337.04. In my opinion, this claim is not well founded. The shares of stock represented by these contracts have never been issued, and MacRobert never contracted to buy them. He had merely an option to acquire them. The shares were not to be issued prior to payment. The fact that in a statement of MacRobert's account with the plaintiff these shares were charged to MacRobert and credit was given to him for the subscription accounts does not alter the situation. In the second cause of action

the plaintiff asserts a liability for $151,701.30, that being the aggregate amount paid by the plaintiff as dividends in the years 1923 and 1924. The sole issue under this count is whether these dividends were paid from surplus, as the defendants declared in the resolution voting them, or whether they were in truth paid from capital. The proof satisfactorily shows that all these dividends were paid out of capital, and that the defendants knew it. The corporate books showed a surplus, but it was made up almost exclusively of fictitious profits. This is not a case of mistaken judgment on the directors' part. It is not a case where in good faith they treated, as already accrued, profits which were unfortunately not realized later. The directors here must have known that nothing short of a miracle could bring about the actual realization of the income and profits which were being entered on the books. I am satisfied that the governing consideration with the defendants when they declared these dividends was the large profit which they were personally realizing on the sale of common stock. This stock cost them only fifty cents a share under the 1922 option, and the payment of generous dividends was indispensable to the success of the stock-selling campaign. It was brought out at the trial that the average price paid by investors for common stock was thirty-three dollars a share, and most if not all of it was sold by the directors. Only by shutting its eyes to the plain facts could the court sustain the payment of these dividends. MacRobert's liability under [1] section 58 of the Stock Corporation Law of 1923 is plain. The fact that as presiding officer he did not actually vote does not absolve him from liability. He was present and unquestionably approved. (*City Investing Co.* v. *Gerken*, 122 Misc. 871.) MacRobert insists that like dividends were paid in 1925 and asserts that the plaintiff's silence as to these dividends arises from the fact that one of the receivers now in control of the plaintiff was then a director and voted in favor of the dividends. Of course, such facts, if true, do not cure the situation for the defendants. If there is a liability as to the 1925 dividends which is being concealed, any creditor or stockholder may present the facts to the court under whose supervision plaintiff's affairs are being administered and demand that the necessary steps to enforce such liability be taken. It remains to deal with certain affirmative defenses interposed by MacRobert. The resolutions passed at annual meetings of stockholders, approving all acts of the officers and directors, do not wipe out the stain of the fraudulent transactions discussed above. The defendants themselves controlled the meetings and cast the deciding votes. Moreover, ratification implies knowledge on the part of the person ratifying, and there is no evidence that the stockholders as a body had the slightest notice of what the defendants had done and were

doing. Under such conditions the sweeping resolutions adopted at the stockholders' meetings did not cure the infirmities inherent in the transactions. (*Bowers* v. *Male*, 111 App. Div. 209; affd., 186 N. Y. 28.) MacRobert also contends that the settlements made by the plaintiff with two of his codefendants operated as a complete release to him. The agreements with these two defendants contained, however, reservations of the plaintiff's rights against the other defendants and, therefore, did not impair the plaintiff's right to pursue MacRobert. (Debtor & Creditor Law, art. 8, as amd. by Laws of 1914, chap. 360.) The latter is entitled, however, to a credit on account for the amounts received and to be received from Bready and Fraser, and the decision and judgment to be entered will so provide. Upon the entire case the court has no hesitation in stating that as it was managed the plaintiff had no chance of success. It was merely the vehicle of the stock-selling activities of at least some of the defendants. The latter were in positions of trust and under the obligations of fiduciaries. The record shows a wanton disregard of those obligations. The defendants kept a large part of the cash collected by them on the sale of stock and instead of accounting for it in cash proceeded to unload on the plaintiff worthless securities owned by them. The declarations of dividends were calculated merely to foster the sale of stock, out of which the defendants apparently derived large profits. Defendant's motions to dismiss the complaint and for judgment are denied, with exceptions to defendant. Judgment will be for the plaintiff for $853,817.65, plus interest, less such credits as MacRobert may be entitled to receive as aforesaid. Submit findings of fact and conclusions of law upon notice.