---

PEOPLE v. EQUITABLE LIFE ASSUR. SOCIETY OF THE UNITED STATES et al.

(Supreme Court, Appellate Division, First Department. March 6, 1908.)

1. CORPORATIONS—DIRECTORS—LIABILITY FOR MISCONDUCT—ACTION BY ATTORNEY GENERAL—STATUTES.

Code Civ. Proc. § 1781, provides that an action may be maintained against one or more trustees, directors, managers, or other officers of a corporation to compel them to account for their official conduct in the management and disposition of the corporation's funds, to compel them to pay to the corporation money or property acquired by them or transferred, lost, or wasted in violation of their duties, to remove them from office, etc.; and section 1782 declares that an action may be brought under the previous section by the Attorney General on behalf of the people of the state. *Held*, that such provisions did not create any new cause of action, except with respect to the removal or suspension of directors, and with that exception authorized the enforcement of causes of action which have accrued to the corporation and which might be enforced by it or its receiver or a stockholder in behalf of himself and all other stockholders in the right of the corporation and for its benefit.

2. ACTION—JOINDER OF ACTIONS—STATUTES.

Causes of action in favor of a corporation against officers and directors for misconduct, enumerated in Code Civ. Proc. §§ 1781, 1782, providing that the actions enumerated may be brought in behalf of the people of the state by the Attorney General, or, with certain exceptions, by a creditor, trustee, director, manager, or other officer of the corporation, etc., are included within section 484, prescribing what causes of action may be joined.

3. SAME—JOINDER OF CAUSES—LEGAL AND EQUITABLE ACTIONS.

Code Civ. Proc. § 484, subds. 1–8 and 10–12, enumerate specific causes of action which may be united, followed by a paragraph expressly providing that it must appear on the face of the complaint that all causes of action so united belong to one of the foregoing subdivisions, that they are consistent with each other, and, except as otherwise prescribed by law, that they affect all the parties to the action. *Held*, that no distinction is made, in regard to joining causes of action, between actions at law and in equity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, §§ 449–467.]

**4. SAME—ACTIONS AFFECTING DIFFERENT PARTIES.**

Under Code Civ. Proc. § 484, providing that in order to justify the joinder of several causes of action it must appear on the face of the complaint that the causes so joined affect all the parties to the action, causes of action against directors, officers, and trustees of a corporation for alleged misconduct could not be joined where there was no claim that there was a conspiracy to commit the acts objected to on the part of any two or more of the defendants, and some of the defendants were not interested in nor liable on some of the causes of action alleged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, §§ 511, 524–547.]

**5. TRUSTS—TRUSTEES—ACCOUNTING—PARTIES—CONTRIBUTION.**

In an action against trustees for an accounting, all are necessary parties where a right of contribution exists.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 424.]

**6. CONTRIBUTION—DIRECTORS AND OFFICERS OF CORPORATION—LIABILITY FOR WRONGDOING.**

There can be no contribution at law between officers and directors of a corporation sued for alleged misconduct in office.

**7. SAME—CONTRIBUTION IN EQUITY.**

Where, in an action against several directors and officers of a corporation for misconduct, some were innocent of wrongdoing and yet were liable to account with others who were guilty, there could be no contribution in equity as between those who neither participated in the same acts nor served at the same time.

**8. CORPORATIONS—OFFICERS AND DIRECTORS—MISCONDUCT—ACTIONS—PARTIES —JOINDER.**

In an action against officers and directors of a corporation for misconduct, all who are chargeable with all the acts alleged, by reason of concerted action or conspiracy, could be properly joined, so far as the provision of Code Civ. Proc. § 484, requiring that causes of action against several, in order to be joined, must affect all the parties to the action, is concerned.

**9. PLEADING—DEMURRER—CAUSES OF ACTION—MISJOINDER.**

Where causes of action at law or in equity which do not affect all of the defendants are improperly joined, those defendants affected by all of the causes of action, as well as those affected only by one or more, may demur on the ground that causes of action are improperly joined.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, § 457.]

**10. ACTION—JOINDER OF ACTIONS—LEGAL AND EQUITABLE ACTIONS.**

An action in equity by a corporation against directors and officers for an accounting because of losses sustained by the defendants' misconduct cannot be joined with an action by the corporation against such officers and directors for negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, §§ 449–468.]

**11. CORPORATIONS—LIABILITY OF DIRECTORS.**

Where it was not claimed that a director of a corporation was negligent in failing to insist on the adoption of proper by-laws to safeguard the interests of the corporation or in voting for officers or in approving the appointment of employés, or that he had any knowledge of or reason to suspect misconduct or violation of duty on the part of any of the members of the finance or executive committees or any officer or employé of the corporation, or that he was guilty of anything more than honest error of judgment in acting or refraining to act, he was not personally liable for transactions accomplished by the officers and executive and finance committees of which he was not a member, under the rule that a director is only liable for his own acts or omissions, unless he participates therein to the injury of the corporation, or fails to exercise ordinary care to safeguard its interests.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1353.]

**12. SAME—SCOPE OF LIABILITY.**

Directors of a corporation are not liable for losses caused by mere errors of judgment, where they act without corrupt intent and in good faith, and are fairly competent to discharge the duties of their position; at least, not unless the acts are unlawful or ultra vires.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1353.]

**13. SAME—PLEADING—CONSTRUCTION.**

Where, in an action against directors of a corporation for misconduct, the complaint alleged negligence generally in the alternative to the effect that some act was done or omitted, the defendants were entitled on demurrer to have the complaint construed as charging a mere omission of duty, and not misfeasance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1421.]

**14. PLEADING—LEGAL CONCLUSION—DEMURRER.**

A charge of omission or commission in an action for negligence is a charge of a legal conclusion which is not admitted by demurrer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, § 527.]

**15. CORPORATIONS—DIRECTORS—MISCONDUCT—DIRECTORS LIABLE.**

Under Code Civ. Proc. § 1781, authorizing an action against directors of a corporation for an accounting for assets lost or wasted by their misconduct, directors who have gone out of office, as well as those who are in office, may be called to account for improper acts.

**16. SAME—PLEADING—CAUSE OF ACTION—ALLEGATION.**

Under Code Civ. Proc. § 481, providing that the complaint shall contain a plain and concise statement of the facts constituting each cause of action, a complaint against directors of a corporation for misconduct should allege specifically the facts constituting the negligence, misconduct, misfeasance, or malfeasance, though the action is brought by the Attorney General, as authorized by Code Civ. Proc. §§ 1781, 1782, the same rules being applicable to such action as would apply if the action was brought by the corporation itself.

**17. SAME—REMEDIES OF CORPORATION—ACCOUNTING.**

A corporation may sue in equity for an accounting against one or more directors with respect to property of the corporation which has actually come into his or their hands, or a fraudulent breach of trust with respect to the management of the corporation or its property, and to recover the value of property lost and incidental damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1416.]

**18. SAME—RECOVERY OF DAMAGES.**

A corporation may sue its directors at law for damages sustained by the corporation in consequence of their wrongful or negligent official acts constituting misfeasance or nonfeasance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1416.]

**19. LIMITATIONS—EQUITABLE ACTIONS.**

Where, in an action against directors of a corporation for malfeasance or misfeasance in office, the remedy at law and in equity is concurrent, the statute of limitations applicable at law will be applied in equity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, § 170.]

**20. SAME—ACTION BY STOCKHOLDER.**

Where a corporation fails to enforce causes of action against directors for malfeasance or misfeasance in office, a stockholder, as the equitable owner of an undivided share in the assets, may sue in equity, but not at law, in the right of the corporation for the benefit of all stockholders,

as well as himself, to enforce the liability of such directors, whether legal or equitable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1426.]

21. ACTION—JOINDER OF ACTIONS—LEGAL AND EQUITABLE ACTIONS.

In an action in equity by a stockholder against directors for malfeasance or misfeasance in office, causes of action may be joined, whether they are legal or equitable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, §§ 449–467.]

22. JURY—TRIAL BY JURY—EQUITABLE ACTION—ISSUES.

In an action in equity by a stockholder of a corporation against directors for malfeasance or misfeasance in office, defendants are entitled to have the issues settled and a trial by a jury as to such of the charges as would otherwise be of a legal nature.

23. CORPORATIONS—DIRECTORS—SUSPENSION—NATURE OF ACTION.

An action by the Attorney General in the name of the people for the removal or suspension of a director of a corporation, as authorized by Code Civ. Proc. §§ 1781, 1782, must be in equity.

24. ACTION—JOINDER OF ACTIONS—SUITS IN EQUITY.

Where an action in equity is brought by the Attorney General in the name of the people for the removal or suspension of a director or directors of a corporation, as authorized by Code Civ. Proc. §§ 1781, 1782, a cause of action against the same director or directors for an accounting may be joined therewith.

25. SAME—STATUTES—CONSTRUCTION.

Code Civ. Proc. § 1781, prior to its amendment by Laws 1907, p. 206, c. 157, authorized the Attorney General in behalf of the people, or a creditor, trustee, director, manager, or other officer of a corporation, to bring an action against one or more trustees, directors, managers, or other officers of the corporation, to procure a judgment compelling them, among other things, to account for their official conduct in the management and disposition of the funds and property committed to their charge, and to pay to the corporation or its creditors any money and the value of any property which they have acquired to themselves or transferred to others, or lost or wasted by the violation of their duties. *Held*, that such section only referred to acts of malfeasance, as distinguished from acts of misfeasance or nonfeasance, and did not authorize an action to recover damages resulting from neglect of duty by corporate directors.

Appeal from Trial Term.

Action by the people of the state of New York against the Equitable Life Assurance Society of the United States and others. From an interlocutory judgment overruling their demurrers to the complaint (101 N. Y. Supp. 354), defendants Levi P. Morton, Chauncey M. Depew, Alfred G. Vanderbilt, Darius O. Mills, Marvin Hughitt, C. Ledyard Blair, Gage E. Tarbell, Bradish Johnson, David H. Moffat, George T. Wilson, John J. McCook, Charles E. Alexander, George J. Gould, Louis Fitzgerald, James J. Hill, Henry C. Frick, John Jacob Astor, Edward H. Harriman, William C. Van Horne, Joseph F. De Navarro, George H. Squire, James B. Forgan, August Belmont, Henry C. Deming, Samuel M. Inman, Thomas De Witt Cuyler, James W. Alexander, William Alexander, Henry M. Alexander, Thomas D. Jordan, James E. Hyde, William H. McIntyre, Joseph Low, Charles Stuart Smith, and Valentine P. Snyder separately appeal. Reversed, with leave to amend or apply for a severance.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, CLARKE, and SCOTT, JJ.

George W. Wickersham, John G. Milburn, and Rastus S. Ransom, for appellants August Belmont and certain others.

Geo. A. Shong, for appellants Low and Smith.

Samuel Untermyer (Abraham Benedict, on the brief), for appellants Hyde and McIntyre.

John De Witt Warner, for appellant Forgan.

Howard Mansfield, for appellant Van Horne.

Edward M. Shepard, for appellant Thomas De Witt Cuyler.

Thomas Thacher (Graham Sumner, on the brief), for appellants Frick and Hill.

William B. Hornblower (James Byrne, on the brief), for appellants Blair and Hughitt.

William F. Goldback, for appellants James W. Alexander and certain others.

Lawrence Greer and F. C. Nicodemus, Jr., for appellants Louis Fitzgerald and certain others.

George Welwood Murray and Charles P. Howland, for appellant Mills.

Timothy I. Dillon, Deputy Atty. Gen. (William S. Jackson, Atty. Gen., on the brief), for respondent.

LAUGHLIN, J. This action is brought by the Attorney General in the name of the people, pursuant to the provisions of sections 1781 and 1782 of the Code of Civil Procedure, against former and present directors of the Equitable Life Assurance Society of the United States, to require them to account for their official conduct in the management and disposition of the funds and property committed to their charge as directors, and to compel them to pay to the society any money and the value of any property which they or any of them have acquired to themselves or transferred to others, or lost or wasted through neglect or violation of their duty, and for the removal of such of the present directors as may be shown to have been guilty of misconduct, and to provide for the election of their successors. The society is joined as a defendant.

The action, although duly brought and prosecuted in the name of the people, is in the right of the society and for its benefit. Brinckerhoff et al. v. Bostwick, 105 N. Y. 567, 12 N. E. 58; People v. Ballard, 134 N. Y. 269, 32 N. E. 54, 17 L. R. A. 737. These provisions of the Code did not create, give rise to, or confer upon the parties enumerated in section 1782 any new cause of action, excepting with respect to the removal or suspension of directors; and with that exception, by the provisions of those sections, the Legislature, in the interest and for the protection of creditors, including policy holders and stockholders, merely authorized the enforcement, by the officials and individuals designated in section 1782, of causes of action which have accrued to the corporation and might be enforced by it or its receiver or by a stockholder in behalf of himself and all other stock-

holders in the right of the corporation. People v. Ballard, supra; People v. Lowe et al., 117 N. Y. 175, 22 N. E. 1016.

There are 32 separate demurrers to the complaint. The demurrers interposed by all appellants, excepting Mills, present a ground in common, viz., that causes of action have been improperly united, in that a cause of action against the demurring defendant has been united with a cause of action against another or other defendants in which he is not interested. The appellant Mills demurs upon the grounds that facts sufficient to constitute a cause of action against him are not stated, and that the plaintiff has not legal capacity to sue. Other grounds of demurrer are stated by many of the appellants; but the appeals may, I think, all be decided upon the grounds to which reference has been made.

Before discussing the questions of law involved in a decision of the appeals, it will be profitable to consider the plans devised by authority for the management of the affairs of this society and the material allegations of the complaint. The Equitable Life Assurance Society is a domestic stock corporation, conducting, as its name implies, the business of life insurance. It was incorporated on or about the 25th day of July, 1859, pursuant to the provisions of chapter 463, p. 887, of the Laws of 1853. The incorporators, as required by the act, embodied in their declaration of intention to form a company a copy of the charter which they proposed to adopt, and it was duly approved as therein provided. The charter provided that the capital should be $100,000, divided into 1,000 shares of $100 each. It also provided that the corporate powers of the company should be vested in a board of 52 directors, "and shall be exercised by them, and by such officers and agents as they may appoint, and from time to time empower"; that each director should own at least 5 shares of the capital stock, and that a majority of the directors should be citizens of the state; that the first board of directors should divide themselves into 4 classes of 13 each, and that the term of office of one class should expire annually after the end of the year 1859, and that one-fourth of the board should thereafter be elected annually for terms of four years, and until their successors should be chosen. It also provided for filling vacancies in the board. The incorporators doubtless contemplated electing many nonresident directors, and that all directors should not be expected to attend the meetings of the board, for the charter, instead of providing that a majority should be essential to a quorum, gave the board power to declare that any number not less than seven should constitute a quorum. The by-laws subsequently adopted provided that nine should constitute a quorum. The charter provided for the election of a president by the board, and authorized it to elect a vice president, and to appoint a secretary "and such other officers as they may deem requisite and who shall hold office during the pleasure of the board of directors." The directors were empowered to enact "by-laws and regulations for the government of the officers and agents, and for the management of the affairs of the company, not inconsistent with this charter, or with the Constitution and laws of this state," which might be amended or repealed by them at pleasure. The

by-laws of the society provided for four quarter-annual meetings of the directors. Special meetings could be called by the president in his discretion, and he was required to call a special meeting on request of five directors. At each quarterly meeting the president was required to make a report "of the transactions of the society during the next preceding financial quarter," stating certain specified particulars, "and all the particulars necessary to form a general exhibit of the society's condition at the close of said quarter." They provided that the officers of the society should be "a president, vice-president, a second, third and fourth vice-president, a secretary, an assistant secretary, an actuary, a comptroller, a treasurer, an assistant treasurer, an auditor, a superintendent of agencies and a registrar," and prescribed their respective duties. The president was ex officio a member of all standing committees. He was given "the general direction and superintendence of the affairs of the society," and authority to appoint all clerks and other employés not appointed by the board, and authority to supervise and direct the other officers with respect to their duties not expressly prescribed. The officers were given power to make contracts for life insurance, "and all other contracts, powers of attorney and instruments in writing necessary for the society in the management of its affairs, in conformity with the rules and regulations of the board for the time being." Five standing committees were created by the by-laws, viz., finance, executive, agencies, insurance, and accounts, and it was provided that the members thereof should be elected by ballot. The finance committee consisted of the president and 10 directors, and 6 constituted a quorum. Its functions were "to superintend the making of investments by the executive committee," to superintend the manner of keeping accounts, "and all matters connected with the finances and expenses of the society, and may itself, or through the executive committee, or through such persons as it may designate, audit all bills and examine and check the cash payments and the vouchers." The executive committee consisted of the president, vice president, comptroller, chairman of the finance committee, "and not less than five others," and four constituted a quorum. It was provided with respect to the executive committee that:

"They shall act as an advisory committee to the president in all the affairs of the society and shall have special charge of the investment of the funds of the society, including the purchase and sale of securities and loans on the same and investments on bond and mortgage, and shall, during the intervals when the finance committee is not in session, have all the powers of the board of directors. The committee shall supervise the condition, security and productive character of the assets and shall devise ways and means to improve their condition, to provide against danger of loss, to rid the society of unproductive assets and to invest and re-invest in productive assets. It shall be their duty to see that the securities are properly guarded and protected and to frame rules for the custody of the same and by periodical examinations and otherwise to test the operations of such rules. They shall, as far as practicable, meet three times in each week for the purpose of advising and consulting with the president and carrying out the purposes of this section, and shall report purchases, loans and other investments made by them to the finance committee."

It was also provided that minutes of the meeting of each committee should be kept in book form, and that "reports of the same" should

be read at every regular meeting of the directors; and that every report of a standing or special committee not entered on the minutes should be in writing, and signed by the committee or its chairman. It was also provided that at the close of each fiscal year the accounts and assets should be examined by a special committee of not less than five directors, the majority of whom should not be members of the finance committee, and that their report should be spread on the minutes.

There are 49 individual defendants, 24 of whom had resigned on or prior to the 5th day of August, 1905, when the action was commenced. Their terms of service commenced on diverse dates from September 14, 1859, to December 7, 1904, and 12 of them were not directors prior to the 31st day of October, 1900.

After setting forth formal matters, the charter and by-laws of the society, and the period during which each defendant was a director, and which of them were members of the finance and executive committees, and the pleader's claim as to the duty of the directors, it is alleged in paragraph 4 of the complaint that:

"The individual defendants herein, disregarding their said duty to said defendant society, and in violation thereof, for a number of years preceding the commencement of this action have negligently, improperly, and improvidently performed such duties, and habitually and continuously done, or caused or suffered to be done, wrongful, illegal, and improper acts (some of which are hereinafter set forth in detail), by reason whereof the defendant society has suffered great loss and damage, and its funds, assets, and property have been wasted and lost, and much money and property to which it has been and is entitled has been withheld from it, all to its great damage; and the individual defendants have acquired to themselves, or caused or permitted to be transferred to others, in violation of their duties, money, property, and the value of property properly belonging to said defendant society."

The plaintiff then alleges that a report was made to the society on the 31st day of May, 1905, by a committee of five directors, consisting of the defendants Frick, Harriman, Ives, Bliss, and Ingall, pursuant to a resolution theretofore passed, directing them to "thoroughly investigate and report upon the present management of the society," and that thereafter the Superintendent of Insurance made an examination into the affairs of the society, and filed a preliminary report thereon in his office on the 20th day of June, 1905. Neither the contents of these reports nor the facts discovered on the investigations are set forth. The allegations with respect thereto, therefore, cannot avail the plaintiff. The plaintiff, then, in paragraphs 10 to 20, inclusive, charges certain specific instances of losses of money and waste of property of the society, and in nearly every instance it is charged that the loss resulted from some act which the defendants negligently caused or suffered or permitted to be done. In the tenth paragraph it is charged that on the 8th day of October, 1900—prior to the time when 12 of the defendants were first elected directors—a lease with the Mercantile Safe Deposit Company, the time of execution of which is not stated, excepting that it appears that it must have been more than 10 years prior thereto, made for an inadequate rental and with terms as to renewal very unfavorable to the society—was renewed; that 10 of the defendants, whose names are specified, at the time of the

·execution of the lease—evidently meaning the original lease, but it is immaterial whether it is that or the renewal that is referred to— were stockholders and directors of the lessee and at the same time officers, directors, and members of the committees of the society, and that the defendants thus named acquired to themselves and transferred to others a certain profit and benefit, the amount of which the plaintiff is unable to state. It is manifest that no cause of action is here stated, at least excepting against the defendants alleged to have profited by the transaction, for the inference is that the lessee was given the right to the renewal by the original lease, and no miscon-·duct is alleged against any defendant with respect to the execution of the original lease, excepting the 10 who profited thereby. In the eleventh paragraph it is alleged that in the month of June, 1902— after which time several of the defendants first became directors— the society purchased the entire capital stock of the Missouri Safe Deposit Company, a corporation of which the defendant Hyde owned a controlling interest, and in which some of the defendants, not specified, were stockholders, directors, and officers, as well as directors and officers of the society, and that the only assets of the Missouri Company were leases from the society—the time of the execution of which is not alleged—for an inadequate rental and the good will of the business resulting therefrom, and there is no allegation that any defendant interested in the sale took part, for the society, in the purchase, ·or that any defendant was guilty of misconduct with respect to the ·execution of the leases, excepting a general allegation that the directors, officers, and members of the committees of the society "improperly, wastefully, improvidently, and in violation of their duty to the defendant society, procured, and caused, and suffered and permitted the defendant society to purchase and acquire" the stock. In the twelfth paragraph the defendants are charged, in the same gen-·eral language as that already quoted from the eleventh, with having during each of the six years preceding the commencement of the action made large, excessive, and unwarranted loans and advances to agents, ·aggregating several millions of dollars each year, on the security of notes of the agents and assignments of moneys to grow due to them in the future, as renewal commissions upon insurance theretofore ·procured by them, and that, to avoid a ruling of the insurance department that these advances could not be regarded as assets, the claims ·against the agents were assigned to trust companies in which certain of the defendants, not specified, were stockholders, directors, and ·officers, and that loans were procured from the trust companies there-·on equal to the face value of the claims, on an agreement of the society to pay interest at the rate of 5 per cent. on such loans, and it is alleged that the loans were left on deposit with the trust companies; that at the times of obtaining these loans the society had funds ·on deposit with the same trust companies in excess of the amount of such loans, and was receiving thereon only 3 per cent.; that the loans were unnecessary and resulted in a large loss to the society, ·and that the individual defendants interested in the trust companies were benefited thereby, and that some of these loans have not been ·repaid and are uncollectible. There is no allegation that the defend-

ants who thus profited by the transactions acted for the society with respect to those matters which, under the by-laws, would fall within the province of the executive committee under the supervision of the finance committee, nor is it shown that any defendant did any particular act with respect thereto.

In the thirteenth paragraph it is alleged that in the year 1902 the society owned the controlling interest in the Western National Bank, in which ten defendants, whose names are specified, were stockholders and directors; that such 10 directors, with 2 other defendants specified, "and others of the individual defendants," brought about a merger between said bank and the National Bank of the United States, on a basis which resulted in a large gain to the individual defendants who were interested in the bank, at the expense of the society, and that this resulted in a loss and waste of property of the society. There is no allegation that the defendants who profited by the transaction acted for the society, or what any defendant did or refrained from doing with respect to consummating the merger, nor is it shown what the value of the stock which the society received was worth, and therefore the facts showing loss or damage are not properly pleaded.

In the fourteenth paragraph the defendants are charged, in the same general language as that already quoted from the eleventh, with having, during the six years preceding the commencement of the action, negligently caused or suffered specified large amounts of money, in excess of the value of the services rendered, to be paid for salaries; and it is further charged generally, without any period being specified, that the individual defendants, as directors, officers and members of the committees of the society, likewise caused or suffered the payment of large and unwarranted sums of money to persons specified, and others not specified, on account of expenses alleged to have been incurred in the service of the society, but for which it was not liable, and that the finance committee and the members thereof wholly failed and neglected to see that the bills were properly audited and to examine the check and cash payments with vouchers for such expenses. In the fifteenth paragraph, the directors are charged in the same general language with having caused or suffered to be paid by the society and by a number of other societies and corporations in which it was a large stockholder, and in which some of them were directors and stockholders, "large sums of money to themselves, or some of their number, and to other persons, in the guise of salaries and fees for attending to their duties as officers and directors and members of the committees," which sums were not paid for the services rendered, but were paid by reason of the fact that the persons receiving the same were officers and directors of the society; that this constituted a loss and waste of the funds of the society to an amount unknown to the plaintiff; and that during several years prior to the commencement of the action the society owned about 44 per cent. of the stock of the Equitable Trust Company and 64 per cent. of the stock of the Mercantile Trust Company, and 35 per cent. of the stock of the Commercial Trust Company. It is then charged, in the same general language, that the defendants, as directors, officers, and members of committees of the society, caused or suffered these trust companies to pay

the defendant Hyde specified large sums of money as salary, in addition to the salary he was receiving from the society, and caused or suffered the payment by the society of improper, illegal, and excessive pensions to various persons. In the sixteenth paragraph it is charged, in the same general language, that the defendants caused or suffered the society to pay excessive, improper, and unwarranted sums of money to various attorneys, greatly in excess of the value of the services rendered. In the seventeenth paragraph complaint is made of a loan by the Mercantile Trust Company to defendants Alexander and Jordan, but it is alleged that the loan was repaid, and therefore, no damages being shown, a cause of action either at law or in equity is not stated. Skinner v. Smith et al., 134 N. Y. 240, 31 N. E. 911. In the eighteenth paragraph it is charged, in the same general language, that the defendant directors, officers, and members of the committees of the society caused or suffered and permitted the society to loan $250,000 to the Depew Improvement Company on inadequate security, and permitted the mortgagor to remain in possession and to collect the rents, which, it is alleged, resulted in a loss to the society of upwards of a quarter of a million of dollars, although it is admitted that certain of the defendants became sureties for the loan, and their solvency is not questioned. In the nineteenth paragraph it is alleged, in the same general language, that "for a number of years last past"—the period not being specified with greater definiteness—the defendant directors, officers, and members of the committees of the society caused or suffered it to keep large sums of money on deposit with certain banks and trust companies in which some of the individual defendants, not specified, were interested, at a low rate of interest, when the funds could and should have been safely invested at a higher rate of interest, which, it is claimed, constituted a waste of the funds and a loss to the society. In the twentieth paragraph, it is alleged that on the 7th day of January, 1902, the society owned a large number of shares of the capital stock of the American Loan & Deposit Company, organized for the purpose of loaning money to policy holders of the society, and consented to an increase of the capital stock thereof, and failed to subscribe for the number of shares of such increase to which, as a stockholder, it was entitled, and suffered certain specified individual defendants interested in the company to subscribe therefor, to their own profit and to the loss of the society; and on the 28th day of January, 1903, consented to another like increase of the capital stock of said company, whose name had then been changed to the Equitable Trust Company, and likewise failed to subscribe for the number of shares to which it was entitled, and permitted specified individual defendants and one Annie F. Hyde to subscribe therefor, to their profit and to the loss of the society, and subsequently procured the purchase by the society of a large block of the stock at a price greatly in excess of the market value thereof. The acts referred to in this paragraph are alleged to have been done by the society; and the only charge against the individual defendants, with the exception of the two who profited by the transaction, is that at the time of each increase of the stock of the American Deposit & Loan Company they individually owned sufficient stock therein, together with that owned

by. the society, to control the business and the affairs of the loan company and of the trust company, and were directors, officers, and members of committees of the defendant society, "and improperly, wastefully, and improvidently, and in violation of their duty to the defendant society, procured and caused the defendant society to refuse to take its proportionate share" of the amount of stock allotted to it upon such increases of capital stock, "and secured and acquired the allotment of the same to themselves and others, to their own profit and benefit and that of such other persons, and to the loss and damage of said defendant society," and when thereafter the value of the stock of the Equitable Trust Company had greatly increased "they procured and caused said defendant society to purchase and acquire" a large number of shares thereof at a price greatly in excess of its value.

It is manifest that it was intended to embrace in the complaint many separate causes of. action, some of an equitable and others of a legal nature; but it is sufficient to sustain all of the demurrers, excepting that of the defendant Mills, if it contain two or more—whether at law or in equity is immaterial—in one or more of which some of the parties defendant are not interested. If the pleader has attempted to set forth two or more causes of action, that is sufficient for a decision of the question now under consideration, even though they be not well pleaded and one or both fail to state facts sufficient to constitute a cause of action. O'Connor v. Virginia Passenger & Power Co., 184 N. Y. 46, 76 N. E. 1082; Higgins v. Crichton, 2 Civ. Proc. R. (Browne) 317; Id., 11 Daly, 114; Id., 98 N. Y. 626. No act of which complaint is made is charged to have been done or suffered or permitted to be done as the result of any scheme, common plan, concerted action, or conspiracy or agreement on the part of any two or more of the defendants; nor are there any allegations connecting the acts of one set of directors with those of their predecessors or successors in office. It is, therefore, quite plain that the 12 directors elected after the alleged misconduct with respect to the renewal ,of the lease to the Mercantile Safe Deposit Company are in no manner. responsible for the loss or waste of property, if any resulted therefrom. Our rules of pleading are prescribed by the Code of Civil Procedure, and no distinction is made—in regard, at least, to joining causes of action—between actions at law and suits in equity. Case v. N. Y. Mutual S. & L. Ass'n, 88 App. Div. 538, 85 N. Y. Supp. 104; O'Connor v. Virginia Passenger & Power Co., supra. It cannot be that the Legislature intended to exclude the causes of action, already existing in favor of the corporation, enumerated in section 1781, from the operation of section 484, which prescribes what causes of action may be united, for clearly those causes of action, if prosecuted by the corporation or by its receiver or by a stockholder, would have been subject to the provisions of section 484. It is not reasonable to impute to the Legislature, in conferring authority upon others who, without it, would have no standing in court to bring the action for the corporation, especially by the same act which contained section 484, an intention to exempt the actions when thus brought from the general rules of pleading. Subdivisions 1 to 8, inclusive, and subdivisions 10 to 12, inclusive, of section 484 of the Code of Civil Proce-

dure, enumerate specific causes of action which may be united; but by the last paragraph of the section it is expressly provided, among other things, that "it must appear, upon the face of the complaint, that all causes of action, so united, belong to one of the foregoing subdivisions of this section; that they are consistent with each other; and, except as otherwise prescribed by law, that they affect all the parties to the action." It is doubtful whether these causes of action fall within the specific enumerations of this section; but if they do, their joinder is prohibited by the provision quoted, for it is evident that they do not affect all of the parties to the action. A cause of action, under these sections of the Code, against all of the members of the board of directors for their individual acts during a particular period, would not affect defendants who were members of a preceding or succeeding board. The only other theory upon which it can be claimed that the causes of action could be united is that they fall within subdivision 9 thereof, upon the ground that they arose "out of the same transaction or transactions connected with the same subject of action." They are not, I think, fairly embraced in those terms. The official acts, whether of malfeasance or nonfeasance, being separate and disconnected, cannot be said either to have arisen out of the same transaction or out of transactions connected with the same subject of action. The subject of each cause of action would be the particular loss or damage sustained by the official misconduct of the directors in office at a given time, who may be jointly and severally, or only severally, liable and accountable to the society for the loss or for the return of the property. Moreover, the last paragraph of section 484, herein quoted, affects the general classes of actions specified in subdivision 9 thereof, as well as those specifically enumerated in the other subdivisions of that section. Kranz v. Lewis, 115 App. Div. 106, 100 N. Y. Supp. 674; Drexel v. Hollander, 112 App. Div. 25, 98 N. Y. Supp. 104.

In an action against trustees for an accounting, all are necessary parties where a right of contribution exists. Sherman v. Parish, 53 N. Y. 483. But if the causes of action are at law, there could be no right to contribution; and even if they be in equity, and some be innocent of wrongdoing and yet liable to account with others guilty of wrongdoing, there could be no contribution as between those who neither participated in the same acts nor served at the same time. Doubtless, as was held in Young v. Equitable Life Assurance Society, 112 App. Div. 760, 98 N. Y. Supp. 1052, if all the defendants participated in the same acts, or if, by reason of concerted action or conspiracy, they were all chargeable with all the acts, they might be joined at least so far as the question now under consideration is concerned, which, it is to be borne in mind, is that the causes of action must affect all of the parties, and not whether they might otherwise be united. The rule is, I think, well settled, by decisions in analogous cases, that, whether the action be at law or in equity, the causes of action must affect all of the defendants, although it is not essential in equity that they shall all be affected alike; and those affected by all of the causes of action, as well as those affected only by one or more, may properly demur upon this ground. O'Connor v. Virginia Passenger & Power Co., supra; Nash v. Hall Signal

Co., 90 Hun, 354, 35 N. Y. Supp. 940; Nichols v. Drew, 94 N. Y. 22; Stanton v. Mo. & Pac. Ry. Co., 15 N. Y. Civ. Pro. R. 296, 2 N. Y. Supp. 298; Sayles v. White, 18 App. Div. 590, 46 N. Y. Supp. 194; Higgins v. Crichton, supra; Arkenburgh v. Wiggins, 13 App. Div. 96, 43 N. Y. Supp. 294, affirmed 162 N. Y. 596, 57 N. E. 1103; Bonnell v. Griswold, 68 N. Y. 294; Case v. N. Y. Mut. S. & L. Ass'n, supra. See, also, Emerson v. Gaither et al., 103 Md. 564, 64 Atl. 26, 8 L. R. A. (N. S.) 738. There is no propriety in requiring one defendant to join issue with respect to causes of action that do not concern him, or in requiring him to attend the trial of many causes of action, lest evidence may be adduced affecting his interest, when he is concerned with perhaps only one of the causes of action. This court recently held in Mutual Life Ins. Co. v. Gillette, 119 App. Div. 430, 104 N. Y. Supp. 683, where the action was brought by the company against a director, that causes of action for an accounting and for negligence in the performance of duties as a director, one being in equity and the other at law, were improperly joined. It is quite clear that if this action had been brought by the society the causes of action could not have been united, for manifestly, although we do not decide that any cause of action is well stated, an attempt has been made to set forth some causes of action which would be at law for negligence, and some for an accounting. which would be in equity, and, therefore, they could not be joined. It is, however, unnecessary to decide whether, assuming—but without deciding that question either—that the Attorney General is authorized in the name of the people, by virtue of the provisions of sections 1781 and 1782 of the Code of Civil Procedure, to recover in behalf of the corporation on causes of action for negligence as well as for an equitable accounting, both may be joined in one action. See Sayles v. White, supra. In deciding that the demurrers for misjoinder of causes of action are well taken, we are not called upon and do not decide as to whether the causes of action attempted to be alleged are well stated. Higgins v. Crichton, supra. All of the demurrers, therefore, presenting this question are well taken.

The only remaining question necessary to be decided upon the appeal is as to whether the complaint states facts sufficient to constitute a cause of action against the appellant Mills. It appears from the schedules annexed to the complaint that he was neither an officer of the society nor a member of the finance committee, nor of the executive committee. His liability, therefore, must be predicated upon his acts or omissions as a director merely. It is not alleged that he received any property of the society for which he failed to account, or that he voted in favor of any unlawful disposition of the property, or fraudulently connived thereat, or was guilty of any breach of trust. He is not one of the defendants named in the complaint as having profited directly or indirectly by any of the transactions of which complaint is made. The transactions of which complaint is made fell within the jurisdiction and functions of the officers and standing committees. They were not matters which would ordinarily be acted upon by such a board of directors as that lawfully constituted for the society. It is nowhere charged that he was guilty of negligence in failing to insist upon the adoption of ap-

propriate by-laws to safeguard the interests of the society, or in voting for officers or approving the appointment of employés, or in voting for or refraining from voting against any specific action of the board of directors, or that he had any knowledge of or reason to suspect misconduct or a violation of duty on the part of any of the members of either the finance or the executive committee, or of any officer or any employé of the society, or that he failed to appear or to take part in the proceedings at any meeting of the board of directors at which he should have attended, or that he was guilty of anything more than an honest error of judgment in acting or refraining from acting. Doubtless the rule enunciated in Franklin Fire Ins. Co. v. Jenkins, 3 Wend. 130, that directors are only liable for their acts as members of the board, is too narrow and technical for modern conditions. The rule still is and must be, however, that each director is only liable for his own acts or omissions, and that one is not liable for the acts or omissions of another unless he participated therein to the injury of the corporation, or had some knowledge by which, in the exercise of reasonable care, he could have prevented the loss, or connived at it, or failed to perform his duty of exercising the authority he possessed to prevent losses which should, in the exercise of reasonable care and skill, have been foreseen and guarded against. Arthur v. Griswold, 55 N. Y. 400; Cassidy v. Uhlmann, 170 N. Y. 505, 63 N. E. 554. The Charitable Corp. v. Sutton et al., 2 Atkyns, 407; Briggs v. Spalding, 141 U. S. 132, 11 Sup. Ct. 924, 35 L. Ed. 662; Spering's Appeal, 71 Pa. 11, 10 Am. Rep. 684. Nor are directors liable for mere errors of judgment where they act without corrupt intent and in good faith and are fairly competent to discharge the duties of the position, at least not unless the acts are unlawful or ultra vires. Ry. & Gen. Light Imp. Co., Mazette's Case, 42 L. T. R. 206; Overend & Gurney v. Gibbs, L. R. 5 H. L. 480; Hennessy v. Muhleman et al., 40 App. Div. 175, 57 N. Y. Supp. 854; Hanna v. Lyon, 179 N. Y. 107–110, 71 N. E. 778; Stokes v. Stokes, 23 App. Div. 552, 48 N. Y. Supp. 722; Briggs v. Spalding, supra; Scott v. De Peyster, 1 Edw. Ch. 513; Hun v. Cary et al., 82 N. Y. 65–70, 37 Am. Rep. 546; Empire State Sav. Bank v. Beard, 81 Hun, 189, 30 N. Y. Supp. 756; People v. Ballard, supra; Piza v. Butler, 90 Hun, 254, 35 N. Y. Supp. 721; Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456; Van Dyck v. McQuade, 86 N. Y. 38; Jacobus v. Diamond Soda Water Co., 94 App. Div. 366, 88 N. Y. Supp. 302.

The general allegations of negligence are all in the alternative, and to the effect that something was done or omitted. While this may be good pleading, it cannot be maintained that the affirmative act is charged, and on demurrer, as this relates to a matter of substance, and not form, the defendant is entitled to have the pleading construed as charging merely an omission of duty. Clark v. Dillon, 97 N. Y. 371; Abbott's Trial Brief on Pleadings (2d Ed.) 87. But whether it be a charge of omission or commission, the facts are not alleged, and a mere charge of negligence, whether of omission or commission, is charging a legal conclusion which is not admitted by the demurrer. Knowles v. City of N. Y., 176 N. Y. 430, 68 N. E. 860; Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263; Thomas v. N. Y. & G. L. Ry. Co., 139 N. Y. 163, 182, 34 N. E. 877; O'Brien v. Fitz–

gerald, 6 App. Div. 509, 513, 39 N. Y. Supp. 454; Franklin Fire
Ins. Co. v. Jenkins, supra; Van Schaick v. Winne, 16 Barb. 89;
Krauz v. Lewis, supra.

The complaint appears to have been framed upon the theory that
it was intended by the Legislature to require directors, when sued
under these sections of the Code, to account, as in the cases of trustees
of express trusts, and that it is unnecessary to specify anything more
than the fact that the defendant was a director. Manifestly this was
not the intention of the Legislature. While it doubtless contemplated
that directors who had gone out of office could be called to account,
as well as directors in office (see Miller v. Quincy, 179 N. Y. 294,
72 N. E. 116), it was never intended that it should be presumed
that there was something for which a director must account. It was,
I think, incumbent upon the plaintiff to allege in this case, as in any
other case, in accordance with the requirements of section 481 of
the Code of Civil Procedure, the facts constituting the negligence or
misconduct, acts of misfeasance or malfeasance, for which it is
sought to hold the directors. Surely it was not intended to give the
plaintiff any greater right in this regard, in an action brought pur-
suant to the provisions of sections 1781 and 1782 of the Code of
Civil Procedure, than in an action brought by a stockholder of the
company, and in the latter case it has been recently held by the Court
of Appeals that the facts constituting the cause of action must be
set forth precisely in the same manner as if the action had been
brought by the corporation itself. Kavanaugh v. Commonwealth Trust
Co., 181 N. Y. 121, 73 N. E. 562; O'Connor v. Virginia Passenger
& Power Co., supra. Ordinarily, where a demurrer is well taken on
one ground, the decision is placed on that, and the court refrains from
expressing an opinion as to whether other grounds presented are ten-
able, because discussion thereof might be regarded as obiter, and the
other questions may be obviated by the new pleading or severance of
the action. Case v. N. Y. Mut. S. & L. Ass'n, supra. In the case at
bar, however, other questions presented by the demurrers likely to arise
under the new pleading or the pleadings served on severing the action
have been discussed with ability by the learned counsel and exhaus-
tively presented by the briefs, and we deem it proper to express briefly
our views thereon.

First. A corporation may have a cause of action in equity against
one or more directors for an accounting with respect to prop-
erty of the corporation that has actually come into his or their
hands, or for a fraudulent breach of trust with respect to the
management of the corporation or its property, and for the recovery
of the value of property lost and incidental damages. Butts v. Woods,
38 Barb. 181; Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55
L. R. A. 751, 85 Am. St. Rep. 667; Mabon v. Miller, 81 App. Div.
10, 80 N. Y. Supp. 979; Jacobus v. Diamond Soda Water Co., 94
App. Div. 366, 88 N. Y. Supp. 302; Miller v. Quincy, 179 N. Y. 294,
72 N. E. 116; Porter v. Int. Br. Co., 163 N. Y. 79, 57 N. E. 174;
Mason v. Henry, 83 Hun, 546, 31 N. Y. Supp. 1068; Id., 152 N. Y.
530, 46 N. E. 837; Mut. Life Ins. Co. v. McCurdy, 118 App. Div.
822, 103 N. Y. Supp. 840; Gildersleeve v. Lester, 68 Hun, 532, 23

N. Y. Supp. 471; Id., 139 N. Y. 608, 35 N. E. 203; Bowers v. Male, 111 App. Div. 209, 97 N. Y. Supp. 722; Id., 186 N. Y. 28, 78 N. E. 577; McClure v. Law, 161 N. Y. 78, 55 N. E. 388, 76 Am. St. Rep. 262; Jacobson v. Brooklyn Laundry Co., 184 N. Y. 152, 76 N. E. 1075. It may also have one or more causes of action at law against one or more directors for damages sustained by the corporation in consequence of his or their wrongful or negligent official acts falling within the terms "misfeasance" or "nonfeasance." O'Brien v. Fitzgerald, 6 App. Div. 509, 39 N. Y. Supp. 707, affirmed 150 N. Y. 572, 44 N. E. 1126; Higgins v. Tefft, 4 App. Div. 63, 38 N. Y. Supp. 716; Dykman v. Keeney, 154 N. Y. 483, 48 N. E. 894; Mut. Life Ins. Co. v. McCurdy, 118 App. Div. 827, 103 N. Y. Supp. 837; Seventeenth Ward Bank v. Webster, 67 App. Div. 228, 73 N. Y. Supp. 648. A suit in equity may not be joined with an action at law against the same directors. Mut. Life Ins. Co. v. Gillette, supra. In some of the cases, on the particular facts arising therein, it has been held that there is a concurrent remedy at law and in equity, and in such cases equity applies the statute of limitations that would govern at law.

Second. If the corporation fail to enforce the causes of action, a stockholder, on account of his personal interest as equitable owner of an undivided share in the assets (Flynn v. B'klyn City Rd. Co., 158 N. Y. 493–504, 53 N. E. 520), is permitted in equity, although he has no standing at law, to bring an action in the right of the corporation, for the benefit of all stockholders as well as himself, to enforce the causes of action, whether of a legal or of an equitable nature; and in such cases the decisions of the courts thus far, with one exception, seem to have gone upon the theory that, because he is obliged to sue in equity, causes of action both at law and in equity may be joined, but that the defendants will be entitled to have issues settled and a trial before a jury as to the charges which would otherwise be of a legal nature; and yet the statute of limitations applicable to equitable actions has in such cases been applied to facts held in other cases to constitute a cause of action at law, although I do not find that it has been expressly held that the statute of limitations can be affected by the personnel of the plaintiff, excepting that the decision in Higgins v. Gedney, 30 App. Div. 481, 52 N. Y. Supp. 331, is to that effect, and there is an intimation in Mason v. Henry, 83 Hun, 546, 31 N. Y. Supp. 1068, to like effect, which, however, on appeal was not adopted. Brinckerhoff v. Bostwick, 88 N. Y. 52; Id., 99 N. Y. 185, 1 N. E. 663; Id., 105 N. Y. 567, 12 N. E. 58; Gray v. Fuller, 17 App. Div. 29, 44 N. Y. Supp. 883; Mason v. Henry, supra; Greaves v. Gouge, 69 N. Y. 154; Kavanaugh v. Commonwealth Trust Co., 181 N. Y. 121, 73 N. E. 562; Flynn v. B'klyn City Rd. Co., 158 N. Y. 493, 53 N. E. 520; Sage v. Culver, 147 N. Y. 241, 41 N. E. 513; McCrea v. McClanahan, 114 App. Div. 70, 99 N. Y. Supp. 689. See O'Brien v. Fitzgerald, supra.

Third. The nature of the relief demanded is such that an action brought by the Attorney General in the name of the people, pursuant to sections 1781 and 1782 of the Code of Civil Procedure, for the removal or suspension of a director, must, I think, be brought in equity, and doubtless it may be joined with a cause of action against

the same director or directors for an accounting. See People v. Ballard, supra, opinion per Beekman, J.

Fourth. The opinion of the Legislature that prior to the amendment of section 1781 by chapter 157, p. 206, of the Laws of 1907, the provisions of that section did not embrace a cause of action for damages caused by the mere neglect of directors to properly perform their duties, is quite significant as to the understanding of the law. The enactment of the amendment, expressly including causes of action for "any neglect or failure to perform their duties," was, of course, entirely unnecessary, if such causes of action were theretofore embraced in the section. I agree with the Legislature and with the executive that they were not. Section 1781, prior to its being amended by chapter 157, p. 206, of the Laws of 1907, which had not gone into effect when the action was commenced, authorized the Attorney General, in behalf of the people, a creditor, trustee, director, manager, or other officer of the corporation having a general superintendence of its concerns, to bring an action against "one or more trustees, directors, managers or other officers of the corporation to procure a judgment" compelling them, among other things, (1) "to account for their official conduct * * * in the management and disposition of the funds and property committed to their charge," and (2) "to pay to the corporation which they represent, or to its creditors, any money, and the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted, by the violation of their duties." These provisions are a substantial re-enactment of sections 33 and 35, art. 2, tit. 4, c. 8, pt. 3, 2 Rev. St. (1st Ed.). People v. Lowe, supra; People v. Ballard, supra. The literal construction of these provisions confines their application to causes of action for an accounting in a court of equity. By the first subdivision they might be required "to account" with respect to their management and disposition of funds and property; and by the second subdivision they might be compelled "to pay" certain money and the value of certain property. In neither section is there any appropriate, language to include causes of action for damages resulting from their neglect of their duties. Courts of equity, both in England and America, always had jurisdiction to call trustees to account for property, but they never assumed to exercise jurisdiction to assess against them, and compel them to pay, damages as such caused by their neglect of duty, excepting where the damages are incidental to equitable relief. Overend, Gurney & Co. v. Gurney, L. R. 4 Ch. App. Cas. 701; Robinson v. Smith, 3 Paige, 222, 24 Am. Dec. 212. It was held by this court in Stokes v. Stokes, 23 App. Div. 552, 48 N. Y. Supp. 722, that these sections of the Code do not authorize an action for misfeasance or nonfeasance, but only for malfeasance. It may be difficult to conform to these views in all cases, but if they be observed, the issues will be more clearly defined and the rights of the parties will be better safeguarded.

It follows that the interlocutory judgment must be reversed, with separate bills of costs to each defendant or defendants separately appearing, and with leave to plaintiff to amend or apply for a severance of the actions.

PATTERSON, P. J., and SCOTT, J., concur.

INGRAHAM, J.  Prior to the Revised Statutes there was considerable doubt as to the jurisdiction of the Court of Chancery to hold the directors, agents, or officers of a corporation liable for a breach of their duties to the corporation at the suit of the state.  Chancellor Kent, in Attorney General v. Utica Ins. Co., 2 Johns. Ch. 371, after an examination of the English cases, was of the opinion that the right of the state to interfere was confined to charitable corporations.  The commissioners to revise the statutes reported section 33 of article 2 (tit. 4, c. 8, pt. 3, 2 Rev. St. [1st Ed.]) to meet this situation, which was passed and which was subsequently re-enacted as section 1781 of the Code of Civil Procedure, and which has remained in force as originally passed until the amendment of 1907.  In the revisers' notes to section 33 it is said that this section was drawn "to supply what are conceived to be important defects in some cases and to remove doubts entertained respecting the court in others.  The first subdivision is intended in connection with section 35 (sections 1781–1782 of the Code of Civil Procedure) to give the Court of Chancery in this state the same power that is exercised by that court in England in the case of charitable corporations and in other cases, the possession of which power is doubted by Chancellor Kent in 2 Johns. Ch. 384, although alleged to be a part of the general jurisdiction of the court in 2 Term Rep. 199.  The second, third, fourth, fifth, and sixth subdivisions are consequences from the first.  In many of our corporations the trustees are a permanent body who supply vacancies in their own board, and a system of abuse and malversation may be perpetrated by them with impunity without some superintending power."  In People v. Ballard, 134 N. Y. 270, 32 N. E. 54, 17 L. R. A. 737, Judge Vann in an exhaustive opinion arrived at the conclusions: First, that the action could be maintained by the Attorney General in the name of the people alone, without a relator; second, that it was for the Attorney General to decide whether the public interests required the action to be so brought, and his determination is conclusive; that "what the public interests require is committed to the absolute discretion of the Attorney General, and that it cannot be made the subject of inquiry by the courts."  Third, that "while a corporation may sell its property to pay debts, or to carry on its business, it cannot sell its property in order to deprive itself of existence.  It cannot sell all its property to a foreign corporation organized through its procurement, with a majority of nonresident trustees, for the express purpose of stepping into its shoes, taking all its assets and carrying on its business.  *  *  *  That, while the stockholders who consented may be estopped by their acts, those who did not consent can take advantage of this violation of their rights, and the state of New York can demand that those who did the wrong shall make restitution."  And the conclusion was that the fact that the trustee acted in good faith did not empower them to do an illegal act, and the fact that there may be some difficulty in the final adjustment of rights, because some stockholders consented, while others did not, constitutes no defense to the action; that the transfer was unauthorized and void as to the

nonassenting stockholders and as to the state, and that the people can maintain the action in their name of sovereignty to enforce the rights of the minority stockholders. It will be noticed in that case that there was no intimation as to the form of the relief to be given, but the whole reasoning of the opinion would seem to indicate that it was the right of the minority stockholders claiming through the corporation that was to be enforced, and that the judgment of the court would be to require the defaulting directors or officers to pay to the corporation for the use of the minority stockholders the money or value of property to which they were entitled. The court examined with great care into the illegal acts charged against the directors of the corporation to determine whether or not the acts specified were illegal, and it was only upon their determining that question in the affirmative that they held the action could be maintained at all. It was because the complaint alleged the transfer of property which was unauthorized and void as to the nonassenting stockholders that the people could maintain the action. And in the opinion of Judge Peckham when the case was before the First Division of the Court of Appeals, which is printed in a note in People v. Ballard, 134 N. Y. 272 (s. c. 32 N. E. 54, 17 L. R. A. 737), the theory as to the cause of action that the people can enforce and the relief that is to be given in such a case is clearly outlined. Thus Judge Peckham says (134 N. Y., page 283, s. c. 32 N. E. 54, 17 L. R. A. 737):

"The general rule, of course, still prevails that a plaintiff must show some interest in the controversy which he asks the court to decide. But where a statute expressly authorizes the people by their Attorney General to sue in certain named cases, such suit may be maintained in those cases, even though the plaintiffs fail to show such an interest in the controversy as would enable them to maintain it were it not for the provisions of the statute."

The learned judge agreed with the dissenting opinion of Mr. Justice Daniels at the General Term, which held that the liability of the trustees to account is limited to those stockholders who have not assented to the transfer. In such an action the people are really, for the purpose of compelling an account, the representatives of the nonassenting shareholders only; that the trustees can be compelled to pay to the corporation which they represent or its creditors any money and the value of any property which they have lost or wasted. If there be no creditors, the account they must render is for the benefit of the stockholders who did not assent to such transfer. Nominally the account is to the corporation, but in reality it is as I have said, where there are no creditors, to the nonassenting shareholders. The conclusion to which the learned judge arrives is based upon the fact that it is to the party injured that the defendants are to account for some act in violation of their duties, and that to maintain the action at all it is therefore necessary that a wrongful act which caused loss to somebody must be alleged and proved in order that the action by any of those mentioned in section 1782 of the Code of Civil Procedure can be maintained. Upon a demurrer to a complaint in such an action, therefore, the question presented is whether it appears that the defendants' official conduct has been such that there resulted a liability to the corporation. And if facts are alleged from which this conclusion follows, then, under section 1782 of the

Code of Civil Procedure, an action may be brought by either the Attorney General on behalf of the people, or a creditor, trustee, director, manager, or other officer of the corporation having general superintendence of its concerns.

From this section of the Code of Civil Procedure it is apparent that the action that can be brought by the Attorney General is the same as that which can be brought by a creditor or trustee.  The people are not given any other or distinct cause of action from that vested in the others named in the section.  Each of the parties there named has the same right to bring the action specified in section 1781 of the Code of Civil Procedure, and while I think it is quite clear that the action is to be brought in equity (see Revisers' Notes to section 33 of the Revised Statutes), there must still be alleged the facts to show that the defendants have violated their duties, and that such violation of duty has resulted in a loss of money or property to the corporation which the corporation is entitled to recover.  Certainly the somewhat remarkable position taken by the Attorney General, that all he has to allege is in the conclusion that the directors have done something that he thinks is wrong, and that thereupon he is entitled to a judgment directing all those against whom he has proceeded to account for their official acts as such directors, is not sustained by any of the provisions of the statute or by any rule of law or procedure of which we have knowledge.  When an action in equity is brought under these sections, there is always a question as to the form that the judgment is to take.  It is quite apparent that there might be included in such an action various causes of action which were formerly equitable or legal, governed by different principles in which the form of judgment would be quite distinct.  Thus, where a director had received and misappropriated money and property belonging to the corporation, he could be held as a trustee to account to the corporation by an equitable judgment for an accounting.  If, however, he had united with other directors in transferring property of the corporation to a third party without consideration and in violation of his duty, the judgment would be a money judgment to recover the value of the property so illegally conveyed or misappropriated.  The element that would justify a judgment for an accounting in equity, namely, the receipt by a trustee of money of a cestui que trust, would be absent; but the defaulting trustee would still be liable to the corporation for the value of the property which had been lost in consequence of his misfeasance or malfeasance.  In a judgment in such an action brought by the Attorney General, as in an action brought by a creditor, trustee, director, or officer, it seems to me that each of these separate demands against the director would have to be set up as a separate and distinct cause of action; each cause of action must allege the facts from which the liability of the director brought into court would appear, and must demand the judgment to which the plaintiff is entitled.  But for these sections of the Code of Civil Procedure it is quite apparent that these several causes of action could not be united, for one would have been an action in equity and another an action at law.  Section 1781 of the Code of Civil Procedure, as amended by chapter 157, p. 206, Laws of 1907, however, I think now authorizes these several causes of action to

be united in one action to be brought in equity by the people or by a creditor or trustee or officer of the corporation; but each wrong for which a recovery is sought is necessarily a separate cause of action, and each separate cause of action must, under section 484 of the Code of Civil Procedure, be consistent with each other and affect all the parties to the action. It follows, therefore, that an Attorney General cannot, any more than a creditor, trustee, or officer of a corporation, unite in one action causes of actions against different directors who are not all liable for all of the wrongful acts alleged. Each cause of action must be complete in itself; must affect all the parties to the action; must allege facts which render all of the defendants liable to the corporation and entitle the corporation to some relief against all the defendants, whether legal or equitable; but these conditions being observed, I think the causes of action may be united. The separate specifications set out in the complaint upon which the action is based allege no cause of action against all of the defendants. None of the acts alleged affect all of the defendants. Most of the alleged causes of action charge the defendants who were trustees or directors solely with negligently permitting the officers to do the acts referred to—a cause of action which was not embraced in section 1781 of the Code of Civil Procedure before the amendment of 1907; and, therefore, it seems to me that this complaint was subject to the objections that the complaint did not state facts sufficient to constitute a cause of action, or that, if it did, causes of action were improperly united.

With this general statement, I concur with LAUGHLIN, J.

CLARKE, J., concurs.