STOKES v. STOKES et al.

(Supreme Court, Appellate Division, First Department. December 31, 1897.)

CORPORATIONS—OFFICERS—MALFEASANCE.

Where, upon a prior appeal, it has been established, as the law of a given case, that the plaintiff, in order to succeed, must establish that the defendant has been guilty of actual malfeasance in office, as the director of a corporation, mere evidence that defendant misconceived his rights, and acted upon such misconception, affords no ground for recovery; for malfeasance in office necessarily involves a corrupt intent.

Appeal from special term.

Action by William E. D. Stokes against Edward S. Stokes and others. From a judgment entered after trial, before the court, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

A. B. Boardman, for appellant.
J. J. Adams, for respondents.

VAN BRUNT, P. J. This action was commenced on the 29th of December, 1892, under section 1781 of the Code, to charge the de-

fendants with official misconduct as directors of the defendant corporation, the Hoffman House. The misconduct charged is that the defendant Stokes, while a director of the corporation, and in charge of its affairs, had misappropriated its funds and property, and generally mismanaged its affairs. This action has been before the general term of the supreme court, and its scope has been there determined; and it is conceded upon the part of the appellant that it has been held and is the law of the case, until reversed by a higher tribunal, that, in order that the plaintiff should succeed, it is necessary that he should establish that the defendant Stokes has been guilty of official misconduct, treating that term as meaning not merely misfeasance, but actual malfeasance in office. The court below dismissed the complaint, upon the ground that the evidence did not show that either of the individual defendants had been guilty of misconduct while acting as a director of the corporation. In considering the question, which is the only one brought up on this appeal, namely, whether this finding of the court is supported by the evidence, it will not be necessary to discuss in detail the various charges which have been made, or the evidence which was offered, and which it is claimed tended to support the same.

It appeared that the defendant the Hoffman House was a foreign corporation, organized in 1890, under the laws of New Jersey, for the purpose, among other things, of conducting hotels and restaurants. In its certificate of incorporation it is stated that the principal part of the business of the company is intended to be conducted out of the state of New Jersey, and that the place where the company proposed to carry on its principal business was in the city, county, and state of New York. According to the by-laws, there were to be five directors. Article 4 contained the following sections:

"Sec. 5. No director shall, by virtue of his office as such, receive any salary or compensation for his services, except as hereinafter provided; but this shall not preclude any director from holding any other office in the said company, or from performing any services for the company and receiving compensation therefor.

"Sec. 6. The board of directors shall hold monthly meetings at their office at No. 111 Broadway, in the city of New York; and such regular meetings shall be held on the third Wednesday of each month, except when that is a holiday, and then the meeting shall be held on the following day. There shall be paid to each director, as his remuneration, the sum of ten dollars for each meeting at which he shall actually attend. The books of account of the company shall also be kept at its office in the city of New York."

The company had three officers,—a president (the defendant), a secretary, and a treasurer. The defendant Edward S. Stokes, E. V. Foote, and M. F. Cornwell were directors of the company from its organization until the bringing of the action, and the plaintiff and W. R. Martin became directors in June, 1891, and ceased to be such directors in July, 1892. The capital stock of the corporation was 2,500 shares of preferred stock, and 5,000 shares of common stock, of the par value of $100 per share. The company purchased the business known as the Hoffman House, and also other restaurants, in the city of New York, belonging to the firm of C.

H. Read & Co., composed of Edward S. Stokes and C. H. Read. The entire capital stock, with $500,000 6 per cent. bonds, was issued to C. H. Read & Co., in payment of the business and property acquired by the company. In 1890 the plaintiff began acquiring stock of the Hoffman House Company, and by August, 1891, he held half of the preferred stock and some 900 shares of the common stock, and held in pledge some 1,463 shares of Read's common stock. At a meeting of the directors held on the 18th of May, 1892, certain resolutions in respect to the transaction of the business of the corporation were introduced by the plaintiff, and were defeated by the votes of the defendant Stokes, Foote, and Cornwell. On the 24th of June, 1892, the plaintiff wrote a letter to the president and secretary of the corporation, demanding a special meeting of the directors, for certain reasons therein stated. On the 25th of June, the secretary of the corporation answered this letter on behalf of the president, refusing, because of the nature of the communication, to call a special meeting, and also informing the plaintiff that he had taken from the company's books the president's private account from the start of the corporation, and that the books up to that date showed $12,624.35 to his debit; and that the president claimed to have paid out several thousand dollars in cash for the benefit of the company, for which he had never had, but was entitled to, credit; and that there had also been charged to his personal account during the past 21 months $15,048.09 for restaurant service, for which he claimed a credit. The secretary further stated that a majority of the board of directors, as he was informed, favored this, and also regarded the president as entitled to a credit for the valuable services he had rendered the company during the two preceding years; and that, in addition, he would be credited on the 1st of July with the coupons of the company's bonds held or owned by him, and amounting to $12,750, which would leave a large balance in his favor. On the 11th of July, 1892, a meeting of the directors was held, prior to which the plaintiff demanded of the defendant Stokes certain books and papers relating to the business of the corporation, and also the personal account of the defendant Stokes with the Hoffman House since its organization to that time. At this meeting of the 11th of July, the dividend was passed, and the plaintiff made certain charges against the defendant Stokes; and, at the same meeting, the charges were dismissed by a vote of the majority of the directors. In August, 1892, the plaintiff and Martin ceased to be directors, and the defendants Leary and McNutt were elected in their place. On the 16th of November, 1892, a meeting of the directors was held, at which all were present. At that meeting, Mr. Foote made a motion that the salary of the president of the company be settled, and made a statement that it had been held in suspense since the organization of the company, and that it should be definitely settled at this meeting. This motion was seconded, and a vote taken, and the motion was carried. Mr. Foote then had a conference with the president, Edward S. Stokes, and reported that $10,000 yearly would be satisfactory, and moved that the president receive such credit on the books of the com-

pany, computed from the date of its organization.    This motion was
seconded, and, upon a vote being taken, was carried, Mr. Stokes
not voting.    The president then called attention to the fact that
he had been charged on the books of the company full rates for
meals and supplies furnished, which charge, owing to his position
in the company, was very large.    The defendant Leary then stated
that no charge should be made under such circumstances, and it
was finally voted that the president should be entitled to a rebate on
all meals and supplies furnished him, and that in the future he
should be only charged one-half of the regular rates; and a credit
was given to him in the sum of $8,312.26, upon the amount of this
account.

The minutes of the meetings of the directors at which the president
was elected in 1890 and 1891 contained no reference to the compensa-
tion to be paid to him for past or future services.    In this action it
was claimed upon the part of the plaintiff that, as an inducement
for him to make certain loans and to purchase certain stock of the
Hoffman House Company, the defendant Stokes told him that there
was an agreement between himself and Mr. Read that neither he nor
Read should receive a cent of salary.    This agreement the defendant
Stokes claimed was, for some reason or other, abandoned.    It further
appeared that in February, 1892, the defendant Stokes wrote to the
plaintiff, among other things, as follows: "Any money I have bor-
rowed has from time to time been charged to me personally, and to
no other account."    This statement was claimed upon the part of the
plaintiff to be untrue, in that there was an account upon the books
of the Hoffman House, in which the defendant Stokes was inter-
ested, called the "Fenwick Hall Account," certain loans having been
made by the Hoffman House to the Fenwick Hall Company; and
also an account entitled the "E. S. Stokes Yacht Account," which
was debtor to the Hoffman House for a considerable sum for money
and supplies.    It was further claimed by the plaintiff that from the
statements showing the profits of the Hoffman House Company, and
showing the account between the defendant Stokes and the company,
it might be inferred that Stokes had placed the Hoffman House prof-
its to his personal credit, and that this accounted for certain apparent
losses in connection with the Hoffman House business.    The evi-
dence, however, showed that the Hoffman House books were correctly
kept, and there was no evidence whatever of falsification of entries
or improper entries in the books to justify the charge in question.
It was also claimed that the defendant Stokes had acted improperly
in reference to the Hoffman House account kept in the North River
Bank, which failed in 1890.    At that time there were some $6,000
to the credit of the Hoffman House on the books of the bank, but at
the same time the bank held the defendant Stokes' note for $9,000,
indorsed by the Hoffman House, the proceeds of which had previously
been placed to the credit of the defendant Stokes.    The receiver of
the bank credited the Hoffman House balance upon Stokes' note,
and received the balance of the note personally.    The defendant
Stokes claimed that the moneys deposited to the credit of the Hoff-

man House account were his individual property, a deposit being made of $5,000 on the day that the Hoffman House commenced business, when it had no money. There was also evidence given in regard to a transaction with the Chemical Bank, in which it was alleged that the defendant Stokes had improperly used the name of the Hoffman House in contravention of the by-laws. There is no claim whatever that any loss came to the Hoffman House on this account, as the notes were all paid by the defendant Stokes. It was also claimed upon the part of the plaintiff that the purchase by the corporation of $25,000 of its bonds held by the defendant Stokes in May, 1892, was a fraud upon the corporation, in that, at the same meeting, the semiannual dividend was passed, because the accounts of the company did not justify any dividend at that time. There were various other claims of misconduct made by the plaintiff against the defendant Stokes upon the trial, to which it is not necessary to refer upon this appeal. The evidence in the case showed that the books of the Hoffman House were correctly kept, the only possible irregularities being in connection with some of the restaurants which were run by the corporation. All the moneys drawn or used by the president were duly entered upon the books, and charged to the proper account; and the only question which could possibly be presented in any form of action was as to the propriety of certain credits which were made to the president in the way of salary and rebate upon meals. In view of the character of this action, it is necessary, in order that the defendant Stokes may be convicted of malfeasance, to show something more than the mere impropriety or unlawfulness of the act. Malfeasance is defined to be the unjust performance of some act which the party had no right or which he had contracted not to do; in other words, the performance of the act, the party being aware of the fact that the right to act did not exist.

Without considering the legal aspect of the questions which have been argued at great length in reference to these matters of meals and salary, we think the case is absolutely barren of evidence tending to show that the defendant was actuated by fraud or a corrupt motive. If he has misconceived his rights, that question can be determined in another form of action; but such misconception affords no ground for convicting him of malfeasance in office, which necessarily involves a corrupt intent. A number of the claims made against the defendant Stokes arise from alleged personal admissions made by him to the plaintiff, which are denied by the defendant Stokes; and such denial is fortified by the proof that the books of the Hoffman House were correctly kept, and that they show all the moneys which were taken or used by the defendant Stokes. An examination and consideration of the evidence seems to show that the basis of the charge lies in inference, which inference is not the only one that can be drawn from the transactions proven. The court below, having considered the evidence, having heard the witnesses testify where questions of conflict of testimony were presented, was better able to determine the question of credibility than is this court from reading the record. But, even upon a consideration of the

evidence contained in the record, there does not seem to be any preponderance of proof upon the part of the plaintiff showing any corrupt intent upon the part of the defendant Stokes in his management of the affairs of the corporation of which he was president.

We think, therefore, that the court below was justified in dismissing the complaint, and the judgment appealed from should be affirmed, with costs.

PATTERSON, WILLIAMS, and O'BRIEN, JJ., concur.  INGRAHAM, J., not voting.