In the Matter of the Application of JAMES F. LOUGHRAN, Petitioner, for an Order of Certiorari against ALFRED MARKLE and Others, Constituting the Board of Supervisors of the County of Ulster, New York, and Another, Respondents.

Third Department, November 15, 1934.

332

*Harry H. Flemming*, for the petitioner.

*Arthur B. Ewig*, for the respondents.

CRAPSER, J. This proceeding was commenced by the adoption of a resolution by the board of supervisors of the county of Ulster, on the 21st day of February, 1934, requesting the petitioner herein to resign as county superintendent of highways for said county.

The resolution recited that at the last regular election a total of seventeen Democratic supervisors were elected which made the board of supervisors stand seventeen Democratic supervisors and sixteen Republican supervisors and that it was the consensus of opinion of the Democratic supervisors so elected and of other persons within the county that the election of the Democratic majority was the result, at least in part, of the dissatisfaction of the taxpayers with the manner in which the highway department of said county had been conducted and that the majority of the board could best assume responsibility by appointing to the head of the department some qualified engineer against whom the taxpayers can have no criticism and asking the county superintendent to resign.

The county superintendent did not resign in response to this resolution, and on the 29th day of March, 1934, Supervisor McDowell offered a resolution preferring charges against the county superintendent of highways under section 30 of the Highway Law and subdivision 2 of section 22 of the Civil Service Law and charging that the county superintendent was guilty of inefficiency, misfeasance and malfeasance in office.

The county superintendent was charged with performing work and labor on and in the improvement of privately-owned property

with county machinery; in constructing a bridge which served only private property; in notifying residents of certain towns that unless a Republican supervisor was elected no further money for highway construction would be available; in unlawfully constructing roads without the consent of or an appropriation therefor by the board of supervisors; in refusing to purchase materials for use in highway construction by public bid and in purchasing materials at a higher price than they could have been purchased; in interfering with the purchase of stone by the contractor of the Napanoch bridge; in the illegal selection and employment of laborers and in directing the employment of laborers whose adherence to the Republican party was definitely known; in using his office as an instrumentality for building up a political party; in unlawfully exceeding the appropriations and in expending excessive sums for highway construction; in diverting and misappropriating county funds for the construction and maintenance of roads; in failure to compute and estimate the cost of particular highways and bridge construction; in knowingly and improperly representing to the State Highway Department that certain highways were to be or were contemplated to be constructed and that moneys had been appropriated for the same when in fact such roads had been already built; in charging and receiving payment from the county of Ulster for work done by himself for the county in addition to his salary as county superintendent of highways; in failing to have a proper system to determine the cost of each mile of highway and failing to co-operate with the committee of the board of supervisors, and in attempting to and in employing clerical aid without regard to the civil service laws or regulations.

The resolution provided that a certified copy be served upon the county superintendent and the board meet on the sixth of April for the purpose of hearing such charges and that the board take such action in respect to such charges as in its judgment may be for the best interest of the taxpayers of the county of Ulster.

On the sixth of April the petitioner appeared specially in person and by attorney and moved to dismiss the charges on the grounds that the mandate of the resolution is not that the board hear and determine the validity of the charges, but that the board take such action with respect to such charges as in its judgment may be to the best interest of the taxpayers of the county of Ulster. Several other grounds for the dismissal of the charges were made, among them that Supervisor McDowell should be disqualified because he was sponsoring the resolution and that the board of supervisors was not a fair tribunal because of the adoption of its first resolution

and because the charges did not constitute misfeasance or malfeasance in office. The motion to dismiss was denied by a strict party vote.

Section 30 of the Highway Law provides that the board of supervisors may appoint a county superintendent of highways and may remove such county superintendent for malfeasance or misfeasance in office upon written charges. Malfeasance involves a corrupt intent. (*Stokes* v. *Stokes*, 23 App. Div. 552.) Misfeasance is defined to be the performance of an act which may lawfully be done in an improper manner by which another person receives injury. (*Burns* v. *Pethcal*, 75 Hun, 437, 443.)

Bills of particulars were furnished the petitioner, and on April seventeenth the board convened and hearings were continued from April seventeenth to April twentieth, both inclusive. The petitioner's defense started on the twenty-third of April and continued to and including the twenty-seventh day of April.

A motion was made at the close of all the evidence to dismiss the petitioner from the office of county superintendent, which motion was carried by a vote of seventeen to sixteen, Supervisor McDowell, the sponsor of the resolution, voting in favor of the resolution.

In ruling upon questions during the trial it was the practice to take the vote of the board after hearing counsel express their views. An examination of the record shows that the vote except in a very few instances was a strict party vote.

The principal evidence offered was in regard to charges 2 and 9. The questions to be determined are those specified in section 1304 of the Civil Practice Act.

The charge designated as No. 9 deals with the construction of a number of highways in the county system and covers the years 1930, 1931 and 1932. The work was under section 320-b of the Highway Law and required the preparation of a map showing the proposed county road system, which map was prepared and approved by the board of supervisors and by the Superintendent of Public Works of the State and filed in the proper offices. The roads to be improved were designated by project numbers and road numbers and all the roads covered by the charges were shown on the map as a part of the county road system.

A statement, as required by section 320-b of the Highway Law, was prepared by the county superintendent and approved by the board of supervisors and the State Highway Department. It was filed in the office of the board of supervisors, in the office of the State Highway Department, and in the office of the county superintendent of highways. This statement showed the selection of the proposed roads, the total mileage and portion it was proposed to

construct or reconstruct during the year 1930 and the estimated cost. The law contained no provision for the expenditure of county road money for preliminary engineering and surveys and the county superintendent had to use such information as was available prior to the year 1933.

The statute provided that the construction of highways was to be carried out as far as practical so as to finish and complete road units or projects. The continuity of routes was an important factor. The working season was normally from May first to November fifteenth, depending upon weather conditions, and some roads could not be finished in one season and had to be carried over and finished in the following season.

All of the money for road construction was handled by the county treasurer, payments were made by warrants on the county treasurer signed by the county superintendent of highways and by the chairman of the board of supervisors. The county road fund was kept by the county treasurer's office and the accounting was done from there. It was all kept in a single ledger account. An examination was made by the Department of Audit and Control for the year 1932; this was a statement of the actual condition of the county road funds for the three years 1930, 1931 and 1932. The State Department had an interest in the county road fund, having contributed thereto, the county through its board of supervisors and the State Department having entered into an agreement as to the roads that should be constructed and an estimate of the amounts to be expended thereon. A duplicate original of the report was filed in the office of the county superintendent of highways where it remains as a part of the records of the office. The document was of importance in reference to charges 9 and 12 and was offered in evidence, but the objection to it was sustained.

The county treasurer, under the statute (Highway Law, § 320-b, subd. 15), was required to file with the clerk of the board of supervisors a report showing the receipts and disbursements of all expenditures in the highway department and the board of supervisors was required to print the report in their annual proceedings. Such a report was made and the deputy county treasurer testified that it was a correct statement; it was offered in evidence; objection was made to it and the objection was sustained.

The report of the Department of Audit and Control and the report of the county treasurer to the board of supervisors were the only complete statements of road accounts which were the subject-matter of the complaints in charges 9 and 12. The refusal to accept these reports was error. There can be no question that both were important to the petitioner. They were admissible under

section 367 of the Civil Practice Act. (*Richards* v. *Robin*, 178 App. Div. 535, 538; 165 N. Y. Supp. 780, 784.)

It was charged that the petitioner used his office to build up a political machine; that he told certain foremen in his employ to employ only Republicans and to send people desiring employment to Republican town committeemen to have their applications for jobs approved; with discharging a man who had a banner on his car advocating the election of candidates of the opposite political party from that of the county superintendent. Several witnesses were sworn who worked upon the jobs and they invariably testified that they had never been spoken to about politics; these witnesses belonged to both parties. Testimony, hearsay in character, was offered to substantiate these charges and was allowed over the objection of the petitioner. The principal testimony in support of the charges was given by Edwin H. Sheeley; it was denied by the petitioner, and several witnesses were sworn who were present at the different times that the county superintendent gave Sheeley instructions who failed to substantiate Sheeley in his testimony in any particular.

All of the roads were built with the approval of the board of supervisors and the money was paid out by the county treasurer upon orders signed by the superintendent of highways and the chairman of the board of supervisors.

The claim is, however, that the county superintendent diverted money appropriated from one job to another. There were instances in the record where roads were almost completed when fall was approaching and where damage would result unless they were finished. In these cases the county superintendent took up the matter with the State Commissioner of Highways and he received his permission to finish the jobs and to draw upon the general highway fund for money. The approval was given by the State Commissioner of Highways on the understanding that the board of supervisors at the next annual session would make an appropriation to cover the deficiency, which promise was carried out by the board of supervisors. It was an open and aboveboard proposition, and while a departure from the strict letter of the law, the departure was for the public good and convenience.

The Van Etten bridge had been a public bridge for many years and had been built by the town and the new bridge, which the county superintendent constructed, he was ordered to construct by the board of supervisors.

The work which was done which it was claimed benefited only private property was the work on Rondout creek and the work in replacing a crib near the TerBush place. This crib had been

constructed by the town, the shovel was up there in response to an appeal by the sheriff for help and was being directed by town officials; it was a short job. The work on Rondout creek near the Van Etten bridge was necessary. Due to flood conditions the stream had left its natural bed and damage had been done; a pier under the bridge had been partially washed out and it was necessary to use the shovel in order to make the creek flow in its natural channel again and thus prevent further damage. The county superintendents from three adjoining counties who examined it testified that this work was necessary and that it was properly done.

The petitioner is charged with refusal to purchase material for use in highway construction upon public bid when materials could have been purchased for a lesser price than that contracted for. The matter in controversy was stone for which three dollars per yard had been paid whereas it was claimed it could have been purchased for two dollars and twenty-five cents per yard. The stone purchased was proper stone which would pass approval. The evidence in regard to the stone was vague and uncertain. There was not sufficient proof to substantiate the charge.

The county superintendent wrote a letter to the contractor of the Napanock bridge asking him to purchase stone produced in the county of Ulster. The request was complied with. The contractor was at liberty to do as he pleased about it.

The petitioner was authorized by the board of supervisors to employ clerical help up to the sum of $3,000. He employed one girl who was paid $64.60 and another girl who received $306; both were employed temporarily and there was no proper civil service list.

The petitioner was charged with receiving payments from the county for work done by himself in addition to his salary. These charges refer to maps and work which he did for the district attorney upon his blue print machine used in his private business which were less than charges elsewhere for similar work. He was not restricted from doing outside work under the terms of his employment as county superintendent of highways.

The record taken as a whole fails to substantiate the charges contained in the resolution; evidence was excluded which ought to have been allowed and which worked to the prejudice of the petitioner. While there was some proof of facts necessary to be proved in order to authorize the making of the determination, yet upon all the evidence there was such a preponderance of proof against the existence of any of the facts that the verdict of a jury affirming the existence thereof would be set aside by the court as against the weight of evidence.

The petitioner is entitled to an annulment of the determination of the board of supervisors, and the proceeding should be dismissed, with fifty dollars costs and disbursements, and the petitioner should be reinstated and his salary paid during the period from the effective date of dismissal to the date of his reinstatement upon the ground that the evidence shows that the charges were improperly and illegally sustained by the board of supervisors and that the charges did not constitute malfeasance or misfeasance in office as required by section 30 of the Highway Law and without which the board of supervisors had no power to remove the petitioner from the position of County Superintendent of Highways.

HILL, P. J., RHODES and HEFFERNAN, JJ., concur; BLISS, J., dissents, with an opinion.

BLISS, J. (dissenting). I dissent. Whatever may be the justification for petitioner's acts with respect to the majority of the charges which were sustained against him (and as to several of those there is grave doubt as to whether this court should reverse and dismiss), there are at least two respects in which petitioner has clearly violated the law and been guilty of malfeasance in office, namely, the expenditures by him in excess of the appropriations made by the board of supervisors for certain county road projects and the expenditure by him of county road funds on projects for which no appropriations had been made by the board of supervisors.

It was charged that in the years 1930 and 1931 the petitioner illegally exceeded the appropriations made by the board of supervisors for the construction of certain county roads and that with knowledge of the illegality of these acts he made a false statement to the board of supervisors and to the State Superintendent of Public Works by which he included in the projects proposed to be constructed during the year 1931 moneys necessary to pay for his 1930 overdrafts, all in violation of subdivision 7 of section 320-b of the Highway Law.

The county roads system and the method of its construction and payment is set forth in section 320-b of the Highway Law. The moneys come from various State and county or town sources and must be expended as therein provided. (Highway Law, § 320-b, subd. 5.) Subdivision 7 of this section provides: " Before any county road fund moneys are spent or obligated in any one year under this section, * * *, the county superintendent of highways shall prepare a statement of the roads * * * proposed to be constructed or reconstructed during such year. This statement must be approved by the board of supervisors of such county and by the superintendent of public works and shall show the location

of the proposed road, * * *, the estimated cost of such construction." Subdivision 8 directs that the construction must be done under the supervision of the county superintendent of highways either by contract or by direct employment of labor and purchase of materials. Subdivision 10 provides the method of payment and states that as the work proceeds the county superintendent of highways shall prepare vouchers for the work done and materials furnished and file the same with the county treasurer who shall pay them.

The evidence relating to this charge shows that the petitioner in a letter to the board of supervisors in March, 1931, admitted that he had expended county road fund moneys in excess of the appropriations made by the board of supervisors for certain 1930 projects on the county road system. In one instance the overdraft was $27,000 in excess of an original appropriation of $15,000. The total of such overdrafts was approximately $87,000. The same letter showed that on certain other projects he had expended less than the amounts specifically appropriated therefor, leaving unexpended balances to the credit of such appropriations. The total of such unexpended balances was approximately $89,000. On a single project there was an unexpended balance of over $33,000 out of an original appropriation for this project of $70,000. At the same time petitioner made out a supplemental statement under subdivision 7 of section 320-b of the Highway Law directed to the board of supervisors of Ulster county and the State Superintendent of Public Works in which he set forth the projects proposed to be constructed or improved during the year 1931 and included in this statement the amounts of the overdrafts of the previous year, setting them up as amounts which " will be required to complete " such projects, although these amounts had in fact already been spent by him. In some instances he also included additional appropriations in these amounts " which will be required to complete " the projects. Although this statement included the amounts necessary to make good his excessive expenditures of the previous year and was, therefore, in that respect false, the statement itself contains no reference to this fact. This statement as executed by the petitioner was submitted to the board of supervisors, which approved the same by resolution and made appropriations of the amounts which the statement showed would be required to complete the projects and which amounts as thus appropriated included the overdrafts already expended by the petitioner during the previous year. At the same time the board of supervisors by a separate resolution " approved " petitioner's statement of roads constructed as referred to in his

letter. This supplemental statement for projects to be constructed during the year 1931 was then forwarded to the State Superintendent of Public Works and there approved. The petitioner then proceeded to again make expenditures in excess of the appropriations for the year 1931, and during the year 1932 he expended moneys on three projects for which there had never been any prior resolution or appropriation by the board of supervisors.

Petitioner's defense to these charges of illegal expenditures and making the false statement to the board of supervisors and the State Superintendent of Public Works was that he considered he " had a right " to go ahead with any road project as long as the county road fund was intact; in other words, that he might expend the total of all appropriations for all projects on any one project to the complete disregard of the other projects. The fact that he made these expenditures in excess of specific appropriations, that he made the false statement and that he expended county road fund moneys on roads for which no appropriations had been made is not denied. There is no issue of fact here. The question, therefore, is one of law as to whether these acts were illegal and constituted either misfeasance or malfeasance in office.

The moneys appropriated by the board of supervisors with the approval of the State Superintendent of Public Works for certain county road projects constituted specific funds to be expended on these specific projects for which they were appropriated. They were placed at petitioner's disposal for these particular purposes and no other. (*Swift* v. *Mayor, etc., of City of N. Y.*, 83 N. Y. 528.) The duty of applying them to these purposes was imposed upon the petitioner by law.

Petitioner disregarded entirely the appropriations made by the board of supervisors for specific projects and expended the moneys according to his own ideas and not as he had been directed by the board of supervisors with the approval of the State Superintendent of Public Works. Clearly his act in overdrawing the appropriations and expending on one project moneys appropriated by the board of supervisors for another project was illegal. Any other construction of the statute makes the approval of the board of supervisors and the Superintendent of Public Works mere nullities. A considerable portion of the county road fund comes from State sources. That is one reason why the statute provides that the expenditure must be in accordance with the approval of the State Superintendent of Public Works. It was the duty of petitioner to expend these moneys for the purposes for which they had been appropriated and not according to his own desires and, of course, there can be no justification what-

soever for his expending county funds on projects which had never been approved either by the board of supervisors or the Superintendent of Public Works and for which no appropriations had been made. The fact that the board of supervisors " approved " of the illegal expenditures after they had been made is no defense and constitutes no ratification of petitioner's illegal expenditures. There is no authority for the board of supervisors to approve such illegal use of the county road fund. The expenditures must be approved by both the board of supervisors and the Superintendent of Public Works and the moneys appropriated before the expenditure and not after it. Petitioner's conduct in making these illegal expenditures was a clear violation of the statute and constitutes malfeasance in office. (See *Carlisle* v. *Burke*, 82 Misc. 282.) The fact that the approval of the State Superintendent of Public Works under section 320-b of the Highway Law is not a perfunctory requirement was held in *Matter of County of Ulster* v. *State Department of Public Works* (211 App. Div. 629; affd., 240 N. Y. 647), a case decided while this petitioner held this same office.

There may be some question as to the refusal by the board of supervisors to admit into evidence certain documents offered by the petitioner. These proposed exhibits are printed in the record and an examination of them confirms the charge that petitioner expended the county road fund illegally. Their rejection, therefore, was not prejudicial to him. At very best such error, if any, would but entitle the petitioner to a new trial and not the dismissal of the charges.

The determination of the board of supervisors removing petitioner should be confirmed.

Determination annulled, with fifty dollars costs and disbursements, proceeding dismissed, petitioner reinstated and his salary directed to be paid from the date of his dismissal to his reinstatement.